**GIBSON, DUNN & CRUTCHER LLP**
John T. Cox III (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2911
Tel:  214.698.3100
TCox@gibsondunn.com
ALegrand@gibsondunn.com

*Counsel to General Electric International, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **IN RE WATTSTOCK, LLC,** *Debtor.* **WATTSTOCK, LLC,** *Plaintiff,* **v.** **ALTA POWER LLC,** *Defendant, Counter-Plaintiff, and Third-Party Plaintiff,* **v.** **WATTSTOCK, LLC,** *Counter-Defendant, and* **GENERAL ELECTRIC INTERNATIONAL, INC., d/b/a GE POWER SERVICES,** *Third-Party Defendant.* | Case No. 3:23-CV-0270-X |

**GENERAL ELECTRIC INTERNATIONAL, INC.'S OBJECTIONS TO THE
BANKRUPTCY COURT'S REPORT AND RECOMMENDATION**

**TABLE OF CONTENTS**

Page

Table of Authorities ...................................................................................................iii

Introduction ........................................................................................................... 1

Background ............................................................................................................. 3

I.    Limited Proceedings in State Court:  The Alta-GE Claims Were Pending for Only Six Months Before the Automatic Stay.............................................. 3

    A.    June 2020:  WattStock Sues Alta (GE Is Not a Party). ......................... 3

    B.    February 2021:  Alta Brings Third-Party Claims Against GE.............. 4

    C.    August 2021:  WattStock Files for Bankruptcy, Triggering an Automatic Stay. ....................................................................................... 5

II.   Eighteen Months in Federal Court:  From WattStock's Removal through Today................................................................................................................ 5

    A.    November 2021:  WattStock Removes the Case to Federal Court. ....... 5

    B.    December 2020–March 2021:  Alta Asks This Court to Take the Case from the Bankruptcy Court, and This Court Agrees. ............................ 5

    C.    March 2021–Present:  GE and Alta Engage in Significant Motion Practice and Discovery in Federal Court, Under the Federal Rules...... 6

III.  Alta and WattStock Agree to Dismiss Their Claims Against Each Other in January 2023; Alta Attempts to Change Course to State Court................ 7

    A.    Alta and WattStock's Mutual Dismissal. ............................................. 7

    B.    GE Moves to Withdraw the Reference; Alta Moves to Remand to State Court. ............................................................................................ 7

    C.    The Bankruptcy Court Recommends Remand....................................... 8

Standard of Review................................................................................................. 9

Argument .............................................................................................................. 10

I.    WattStock's Dismissal Does Not Require Mandatory Abstention................. 11

    A.    There Continues to Be Federal Jurisdiction over This Case................ 11

    B.    Mandatory Abstention Is Not Required under Section 1334(c)(2). ....... 13

II.   WattStock's Dismissal Does Not Support Discretionary Remand, Either.... 15

    A.    Remand Would Inequitably Cause Delay and Prejudice...................... 16

    B.    Alta Argues, and the Bankruptcy Court Concluded, That Remand Is Appropriate by Misapplying an Inapposite Test. ................................. 19

        C.     The Equities Favor Keeping This Case in Federal Court. ................... 21

Conclusion ........................................................................................................ 24

Certificate of Service ....................................................................................... 26

## TABLE OF AUTHORITIES

<u>Page(s)</u>

### CASES

*Carnegie–Mellon University v. Cohill*,
    484 U.S. 343 (1988) ........................................................................................ 22

*Caterpillar Inc. v. Lewis*,
    519 U.S. 61 (1996) .......................................................................................... 21

*Doddy v. Oxy USA, Inc.*,
    101 F.3d 448 (5th Cir. 1996) ............................................................ 12, 16, 22, 23

*Double Eagle Energy Servs., LLC v. MarkWest Utica EMG, LLC*,
    936 F.3d 260 (5th Cir. 2019) ........................................................ 2, 10, 11, 12

*In re EbaseOne Corp.*,
    2006 WL 2405732 (Bankr. S.D. Tex. June 14, 2006) ........................................... 20

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
    545 U.S. 546 (2005) ........................................................................................ 21

*In re GenOn Mid-Atl. Dev., LLC*,
    42 F.4th 523 (5th Cir. 2022) ........................................................ 10, 13, 14, 21

*In re Gober*,
    100 F.3d 1195 (5th Cir. 1996) .......................................................................... 23

*Grupo Dataflux v. Atlas Global Group, LP*,
    541 U.S. 567 (2004) ........................................................................................ 12

*Holland Am. Ins. Co. v. Succession of Roy*,
    777 F.2d 992 (5th Cir. 1985) ............................................................................ 20

*In re Mugica*,
    362 B.R. 782 (Bankr. S.D. Tex. 200) ................................................................. 14

*In re Pearl Res. LLC*,
    2022 WL 17478531 (Bankr. S.D. Tex. Dec. 6, 2022) ........................................... 15

*In re TXNB Internal Case*,
    483 F.3d 292 (5th Cir. 2007) ............................................................................ 13

### STATUTES

11 U.S.C. § 362 ...................................................................................................... 5

28 U.S.C. § 157 ...................................................................................................... 9

28 U.S.C. § 1332 .............................................................................................. 10, 12

28 U.S.C. § 1334 .............................................................................................. *passim*

## TABLE OF AUTHORITIES
(cont'd)

Page(s)

28 U.S.C. § 1446 ................................................................................. 14, 21

28 U.S.C. § 1447 ..................................................................................... 14

28 U.S.C. § 1452 ............................................................................. 1, 2, 5, 8

Ala. Code § 12-21-406 .............................................................................. 18

Cal. Civ. Proc. Code § 2029.300 ................................................................ 17

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 .................................................................................... 18

Fed. R. Civ. P. 30 .................................................................................... 18

Northern District of Texas Miscellaneous Order No. 33 (Aug. 3, 1984) ...................... 5

Tex. R. Civ. P. 195.5 ................................................................................ 18

Tex. R. Civ. P. 199.5 ................................................................................ 18

## INTRODUCTION

The question before the Court is simple:  Should this case be sent to state court—even though Alta and GE previously agreed it should be in federal court, and as a result, have been actively litigating in federal court for 18 months—simply because WattStock (the original plaintiff) settled its claims and was dismissed?  To ask that question is to answer it.

That it was WattStock's bankruptcy that landed this case in federal court changes nothing.  If anything, WattStock's dismissal only confirms that this case should remain in federal court.  After all, it was WattStock that filed suit against Alta in state court in the first place (Alta later filed third-party claims against GE).  And, absent WattStock, there is complete diversity between GE and Alta (providing a *second*, independent source of federal jurisdiction).

That *Alta* wants this case in state court—rather than here—is particularly surprising.  When WattStock removed this case eighteen months ago, *see* 28 U.S.C. § 1452(a), Alta not only declined to seek remand—it affirmatively asked this Court to take the case back from the bankruptcy court.  According to Alta, this case "present[s] complex, non-bankruptcy claims and legal issues with which district courts are well familiar" and which this Court is "well-suited to hear."  ECF 3, at 9 (Alta Mot. to Withdraw Reference).[1]

---

[1]  All references to "ECF" are to the bankruptcy court's online docket at case number 21-03083.  For ease of reference, all pin cites are to the ECF stamp.

GE's Objection to Report and Recommendation – Page 1

This Court agreed, withdrew the reference, and then returned "pretrial matters" back to the bankruptcy court, citing "judicial economy" and "the important goal of uniformity and efficiency in bankruptcy administration." ECF 45, at 1.

That's all still true. The only difference is that there is no longer any reason for the bankruptcy court to handle "pretrial management"—no debtor, and no concerns about "bankruptcy administration." ECF 45, at 1. That's why GE promptly asked this Court to handle all further proceedings itself. ECF 104 (GE Mot. to Withdraw the Reference).

Alta advances two separate bases for a remand: mandatory abstention under 28 U.S.C. § 1334(c)(2) and discretionary equitable remand under 28 U.S.C. § 1452(b). Neither withstands scrutiny.

WattStock's dismissal doesn't impact federal jurisdiction or the section 1334(c)(2) analysis, making Alta's mandatory-abstention argument untimely and meritless. ECF 159 (R&R), at 6 ("GE is correct"); *see Double Eagle Energy Servs., LLC v. MarkWest Utica EMG, LLC*, 936 F.3d 260, 263 (5th Cir. 2019) ("even the closing of a bankruptcy case does not divest federal courts of section 1334(b) jurisdiction").

Alta's equitable-remand request fares no better. Alta's argument (and the bankruptcy court's analysis) focuses exclusively on whether this case should be in bankruptcy court or state court. But that's beside the point. Everyone agrees that this case no longer belongs in bankruptcy court. The question is: keep it in federal court (this Court) or send it to state court. By woodenly applying a judicially created, fourteen-factor test designed to assess bankruptcy versus state court, Alta (and the

GE's Objection to Report and Recommendation – Page 2

bankruptcy court) all but ignored the past *eighteen months* that the parties have been actively litigating this case in federal court, under the federal rules, with an eye toward a federal trial this fall. Those eighteen months are *triple* the time the Alta-GE claims were in state court before the automatic stay.

Moreover, the bankruptcy court's suggestion that "very little of substance has happened since removal" blinks reality. R&R 2. The past eighteen months have seen *160* docket entries and the parties have: (1) filed and answered counterclaims; (2) fully litigated a motion for judgment on the pleadings; (3) produced 30,000 documents; (4) taken seven depositions; and (5) conducted significant third-party discovery—all in federal court, all under the federal rules.

Remand would serve only to delay the ultimate resolution of this case while at the same time undermining and prejudicing the parties' reliance on and compliance with the federal rules. This Court should withdraw the reference and decline to remand the case to state court.

**BACKGROUND**

**I.    Limited Proceedings in State Court:  The Alta-GE Claims Were Pending for Only Six Months Before the Automatic Stay.**

**A.    June 2020:  WattStock Sues Alta (GE Is Not a Party).**

In June 2020, WattStock sued Alta in Texas state court for breach of contract. ECF 1-3, at 1–13. WattStock had agreed to locate and refurbish aeroderivative gas turbines for Alta to use in developing so-called peaker electricity plants, ECF 31, at 10–11, and when their relationship soured over funding disputes, WattStock sued Alta. ECF 1-3, at 1–13. Alta counterclaimed alleging a variety of tort and contract

claims of its own.  ECF 1-3, at 75–96.  Over the next eight months, WattStock and Alta litigated their claims in state court, which did not resolve a single substantive motion during this time.[2]

In November 2020, Alta served a third-party document subpoena on GE, which was a subcontractor to WattStock on Alta's proposed projects.  ECF No. 31, at 10–11; ECF 1-3, at 189–94.  But before GE could comply, WattStock moved to quash the subpoena.  ECF 1-3, at 248–63.

### B.    February 2021:  Alta Brings Third-Party Claims Against GE.

Despite admitting that GE was neither named in nor a signatory to the WattStock-Alta contracts, Alta filed a third-party complaint against GE in February 2021, alleging a number of contract and tort claims.  ECF 1-4, at 15–41.  Over the next six months (the entirety of the time that GE was in state court), GE made only three substantive filings:  (1) a motion to dismiss in April 2021; (2) a reply in support of that motion in May 2021; and, after that motion was denied in a single-sentence, unreasoned order, (3) an answer to Alta's third-party complaint in June 2021.  *See* ECF 1-4, at 55–132 (MTD); ECF 1-4, at 316–22 (reply), ECF 1-4, at 329 (order); ECF 1-4, at 375–82 (answer).

---

[2]  The only contested motion the court resolved was a motion to compel on January 6, 2021.  ECF No. 1-4, at 1–2.

### C. August 2021: WattStock Files for Bankruptcy, Triggering an Automatic Stay.

Before the state-court litigation proceeded any further, WattStock filed for bankruptcy in August 2021, which triggered an automatic stay. *See* ECF 1-4, at 402–04 (notice of suggestion of bankruptcy); 11 U.S.C. § 362(a) (automatic stay).

## II. Eighteen Months in Federal Court: From WattStock's Removal through Today.

### A. November 2021: WattStock Removes the Case to Federal Court.

After three months of inactivity, WattStock removed this case to federal court on November 9, 2021 under section 1452(a), citing section 1334(b)'s grant of bankruptcy jurisdiction. ECF 1 (notice of removal); *see* 28 U.S.C. §§ 1334(b), 1452(a). Upon removal to this Court, it was automatically referred to the bankruptcy court under the Northern District's Miscellaneous Order No. 33. *See* N.D. Tex. Misc. Order 33 (Aug. 3, 1984), https://t.ly/0_7O.

### B. December 2020–March 2021: Alta Asks This Court to Take the Case from the Bankruptcy Court, and This Court Agrees.

In December 2021, Alta moved this Court to withdraw the reference and hear the entire case (or at least Alta's claims against GE) itself in the first instance. ECF 3, at 9. As Alta explained, this case involved exclusively "non-core, state-law claims" that "could exist independently outside of bankruptcy." ECF 3, at 6. This Court was "well-suited" to adjudicate these "complex, non-bankruptcy claims and legal issues," none of which "hinge[d] on technical bankruptcy principles or require[d] any expertise or even familiarity with bankruptcy law." ECF 3, at 9.

Everyone—GE, Alta, WattStock, the bankruptcy court, and this Court—ultimately agreed.   ECF 13, at 2 (GE); ECF 15 (WattStock); ECF 19, at 2–3 (bankruptcy court); ECF 45, at 1 (this Court).  This Court held that it would withdraw the reference once the case was "ready for trial," and—citing the bankruptcy court's "familiarity with the facts and the parties," as well as "judicial economy" and "the important goal of uniformity and efficiency in bankruptcy administration"—the Court referred the case to the bankruptcy court "for pretrial management."  ECF 45, at 1.

### C.      March 2021–Present:  GE and Alta Engage in Significant Motion Practice and Discovery in Federal Court, Under the Federal Rules.

Since this case has been in federal court, the parties have fully litigated—and the bankruptcy court has ruled on—GE's motion for judgment on the pleadings, which the bankruptcy court denied after a hearing on May 18, 2022.  ECF 31, 39, 40, 46, 48.  GE filed eight counterclaims against Alta, and Alta answered.  ECF 128, 134.  And the parties fully litigated—and received a ruling on—a motion to compel.  ECF 65, 71, 72, 75.

In terms of substantive discovery, the parties have collectively (and in compliance with the federal rules and a Stipulated Protective Order that the parties negotiated, *see* ECF 28):

- produced 30,000 documents (7,400 from GE and 23,000 from Alta), comprising over 100,000 pages;

- deposed 7 witnesses (5 from GE and 2 from Alta), and are actively negotiating to schedule 7 more;

- served 19 third-party subpoenas, which have yielded nearly 6,000 documents, and will culminate in at least four separate third-party depositions, including of some out-of-state citizens; and

- identified two experts, as required by the Stipulated Protective Order, who have begun working on this case.

By the time Alta moved to remand this case, all of this litigation activity had positioned the parties to (i) close discovery in June 2023; (ii) file dispositive motions by August, and (iii) begin trial this October.  *See* ECF 131, at 46.[3]

## III. Alta and WattStock Agree to Dismiss Their Claims Against Each Other in January 2023; Alta Attempts to Change Course to State Court.

### A. Alta and WattStock's Mutual Dismissal.

On January 20, 2023, after nearly 30 months of litigation, WattStock and Alta jointly moved to dismiss all claims between them with prejudice.  ECF 96.  No money changed hands, and no formal settlement agreement was signed; the parties simply moved to drop their claims against each other.  ECF 96.  The bankruptcy court granted their motion eleven days later—before GE had a chance to take any position on the motion, even though this case turns almost entirely on *WattStock's* alleged conduct.  ECF 101.

### B. GE Moves to Withdraw the Reference; Alta Moves to Remand to State Court.

The day after the bankruptcy court dismissed WattStock, GE moved this Court to withdraw the reference and hear all remaining issues in this case itself.  ECF 104. GE's arguments echoed the arguments Alta made in its December 2021 motion to

---

[3]  That timeline has only recently been called into doubt by Alta's continued failure to produce documents, including documents that the bankruptcy court compelled it to produce six months ago. *See* ECF 75.

withdraw the reference:  this case involves exclusively non-bankruptcy claims that this Court is well-suited to adjudicate, and since there's no reason to conduct any further proceedings in the bankruptcy court, this Court should simply accelerate withdrawal of the reference (which it had already agreed to do once the parties were trial ready).  ECF 104, at 7–13.

Alta agreed that the case no longer belongs in bankruptcy court but—in an about-face from fifteen months prior—asked not for this Court to take over, but for the case to be *remanded* to state court.  ECF 106.  Alta filed its motion immediately after GE's motion, and requested mandatory abstention under section 1334(c)(2) and discretionary equitable remand under section 1452(b).  28 U.S.C. §§ 1334(c)(2), 1452(b).  Alta had every opportunity to seek these remedies upon removal in December 2021, but opted instead to move to withdraw the reference.  ECF 3.  It has never adequately explained why WattStock's dismissal justifies reversing course.

### C.    The Bankruptcy Court Recommends Remand.

On March 29, 2023, the bankruptcy court issued an order granting Alta's request for discretionary remand under section 1452(b).  ECF 140.  The court agreed that—for jurisdictional purposes—"it does not matter that WattStock is no longer a party."  ECF 140, at 4–5.  Nevertheless, the court ordered discretionary remand based exclusively on its application of a fourteen-factor balancing test evaluating whether bankruptcy court or state court is a more appropriate forum.  ECF 140, at 5–7.  The court did not respond to GE's argument that this test is beside the point where the parties *agree* that the case does not belong in bankruptcy court.  ECF 130, at 14–15.

Nor did it address GE's contention that economy, convenience, and fairness—in particular, the case's progress and momentum in federal court and Alta's inexplicably changed position on withdrawing the reference—counsel in favor of federal court over state court.  ECF 130, at 15–17.  The order summarily denied "[a]ll other pending relief," including GE's motion to withdraw the reference.  ECF 140, at 2.

On April 10, 2023, GE filed a motion for reconsideration arguing that, absent consent of the parties (which was not provided here), the bankruptcy court lacked both the statutory and constitutional authority to enter a remand order in a case involving only "non-core" claims.  ECF 152; *see* 28 U.S.C. § 157(c)(1).  On April 26, the bankruptcy court agreed, vacated its remand order, and converted it into a report and recommendation that contains nearly identical legal analysis, but also adds the bankruptcy court's opinion that "very little of substance has happened since removal." ECF 157; R&R 2.  The report and recommendation does not resolve GE's motion to withdraw the reference.

After the bankruptcy court's now-vacated remand order, the parties have not conducted any litigation in state court, and have agreed to continue discovery under the federal rules pending this Court's resolution of the remand issue.

## STANDARD OF REVIEW

This Court reviews the bankruptcy court's recommendation in favor of discretionary remand de novo.  28 U.S.C. § 157(c)(1).

## ARGUMENT

GE and Alta agree that this case no longer belongs in bankruptcy court. The question is whether it should continue in federal court—where it has been actively litigated for the past eighteen months—or be sent to state court.

The answer is easy: As Alta agreed eighteen months ago, this Court is "well-suited to hear" the "complex non-bankruptcy claims and legal issues" this case presents. ECF 3, at 9. WattStock's dismissal changes nothing. Mandatory abstention doesn't apply and equity favors continuity in this case.

**I.** It's black-letter law that WattStock's dismissal doesn't eliminate the federal jurisdiction that undisputedly existed when this case was removed. *See Double Eagle Energy*, 936 F.3d at 263. Nor does it impact the mandatory-abstention analysis. Mandatory abstention doesn't apply because Alta's suit against GE could have been brought in federal court—there's complete diversity and the amount in controversy is easily satisfied. *See* 28 U.S.C. §§ 1332(a)(1), 1334(c)(2); *In re GenOn Mid-Atl. Dev., LLC*, 42 F.4th 523, 540 (5th Cir. 2022). And in all events, Alta's motion is untimely by a mile.

**II.** Nor does WattStock's dismissal support equitable remand. The parties have been actively litigating their claims in federal court, under the federal rules, for *three times* as long as in state court. They have fully litigated a motion for judgment on the pleadings, exchanged 30,000 documents in discovery, conducted seven depositions, and engaged in significant third-party discovery—all with an eye toward a federal trial that the parties were previously on track to be ready for this fall.

GE's Objection to Report and Recommendation – Page 10

Remand would serve no purpose other than to increase the cost of litigating this case, delay the ultimate resolution of this case, and upend settled expectations about which rules apply to the proceedings that remain—including fact and expert discovery, dispositive motions, and any trial.

Alta urges, and the bankruptcy court reached, the opposite conclusion by reflexively applying a fourteen-factor test that compares the bankruptcy court to the state court. It is no surprise that the state court won that battle—because no one, not even Alta, argues that this case should be in bankruptcy court. The *real* question is federal district court versus state court. That question was never addressed by the bankruptcy court. But applying a test that assesses *that* question—or even the bankruptcy court's test without its fixation on the case's connection to bankruptcy— makes clear that equity compels continuing in the same forum where the parties have been for the last year and a half.

## I.     WattStock's Dismissal Does Not Require Mandatory Abstention.

Alta's lead argument in the bankruptcy court was that this case *must* be returned to state court. ECF 107, at 7–10. That's wrong. There continues to be federal bankruptcy jurisdiction over this case and section 1334(c)(2) does not require abstention.

### A.     There Continues to Be Federal Jurisdiction over This Case.

As the Fifth Circuit has made clear, and as the bankruptcy court correctly recognized, R&R 6, "the related-to bankruptcy jurisdiction that exist[s] at the outset of [a] case never [goes] away." *Double Eagle Energy*, 936 F.3d at 263–64. Indeed,

"even the closing of a bankruptcy case does not divest federal courts of section 1334(b) jurisdiction over cases that, when filed, were related to the bankruptcy." *Id.* at 263; *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996). That's because the "time-of-filing rule—that subject matter jurisdiction is determined when a federal court's jurisdiction is first invoked—is 'hornbook law.'" *Double Eagle Energy*, 936 F.3d at 263 (quoting *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 570 (2004)).

There's no dispute that there was federal jurisdiction over this case under section 1334(b) when it was removed in November 2021, and thus no dispute that there continues to be federal jurisdiction under section 1334(b) today.

In fact, WattStock's dismissal has provided a second, independent source of federal jurisdiction—diversity jurisdiction under section 1332(a)(1). The amount in controversy well exceeds $75,000 and there is complete diversity—Alta is a Texas citizen and GE is a citizen of Ohio and Delaware. 28 U.S.C. § 1332(a)(1); *see* ECF 1-4, at 17 (Alta seeks "more than $1,000,000"); ECF 128, at 3 (alleging citizenships), ECF 134, at 3 (Alta admits citizenship). WattStock is the only reason there was not diversity jurisdiction from the outset—like Alta, it's a Texas citizen, which destroyed complete diversity. *See* ECF 132, at 4 ("both parties have recognized [that] WattStock destroyed diversity"). But, as the U.S. Supreme Court explained, "the dismissal of the party that had destroyed diversity [is a] method of curing a jurisdictional defect [that] ha[s] long been an exception to the time-of-filing rule." *Grupo Dataflux*, 541 U.S. at 572.

Accordingly, there is not one, but two independent sources of federal jurisdiction over this case.

### B.     Mandatory Abstention Is Not Required under Section 1334(c)(2).

Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim . . . related to a case under title 11 . . . with respect to which an action could not have been commenced in [federal] court . . . absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

To break that down, under section 1334(c)(2), a district court must abstain from hearing a case over which it has bankruptcy jurisdiction (under section 1334), if: (1) the motion is "timely"; (2) the case involves non-core, state-law claims (that only relate to a bankruptcy case); (3) "an action" "with respect to" those state-law claims "could not have been commenced" in federal court absent bankruptcy jurisdiction; and (4) an action involving those claims "has been commenced" and "can be timely adjudicated" in state court. *GenOn*, 42 F.4th at 539; ECF 107, at 7–8.

Abstention isn't required here for two separate, independent reasons: (1) diversity provides an independent ground of federal jurisdiction for the claims between Alta and GE, and (2) Alta's motion was untimely.

1.     Alta's mandatory-abstention argument fails on the merits. As the plain statutory text makes clear, section 1334(c)(2) applies only if there's no non-bankruptcy source of federal jurisdiction. 28 U.S.C. § 1334(c)(2) ("an action could not have been commenced in [federal court] . . . absent [bankruptcy] jurisdiction"); *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007) (mandatory abstention

requires that "[t]he claim has no independent basis for federal jurisdiction"). As explained above, there's federal diversity jurisdiction over the claims between Alta and GE because there's complete diversity and the amount in controversy is satisfied.

Alta gets wrapped around the axle by fixating on whether GE could *remove* Alta's claims against it to federal court based on diversity jurisdiction—either now (more than a year since the case commenced) or when WattStock removed on bankruptcy grounds (when the parties were not diverse). ECF 107, at 8–10; ECF 132, at 2–4. But that's not the question. As the statute says, and the Fifth Circuit has confirmed, the question is whether "*an* action—any action—with respect to [Alta's] state-law claims against [GE] could have been commenced in a federal court." *GenOn*, 42 F.4th at 539. That "diversity jurisdiction did not support *removal* of [Alta's] claims" is irrelevant: "that's not what Section 1334(c)(2) asks." *Id*. at 540.[4]

Thus, mandatory abstention isn't required here because "an action" "based upon" Alta's "State law claim[s]" against GE could "have been commenced in federal court"—Alta and GE have always been diverse and Alta has always sought more than $75,000.

2.    In all events, Alta's motion—filed fifteen months after this case was removed to federal court—is untimely under any standard. *E.g.*, 28 U.S.C. § 1447(c)

---

[4] Resisting this straightforward analysis, Alta relies on *In re Mugica*, a bankruptcy court decision that relied heavily on "Congress' intent" to conclude that the existence of diversity jurisdiction turned on whether a case was *currently removable*. 362 B.R. 782 (Bankr. S.D. Tex. 2007) (abstaining under section 1334(c)(2) notwithstanding complete diversity because "[m]ore than one year had passed before the parties became sufficiently diverse to invoke diversity jurisdiction") (citing 28 U.S.C. § 1446(b)); *see* ECF 107, at 9 (citing *Mugica*). But *Mugica*'s removal-centric analysis is flatly inconsistent with *GenOn*, which the Fifth Circuit decided just last year. 42 F.4th at 539–40.

(30 days to seek remand); *In re Pearl Res. LLC*, 2022 WL 17478531, at *3 (Bankr. S.D. Tex. Dec. 6, 2022) (mandatory abstention motion filed 61 days after removal was untimely).  Alta doesn't dispute that chronology.  Instead, it argues that its motion "was timely made after the request to dismiss WattStock."  ECF 107, at 8.  But that's irrelevant—nothing about WattStock's dismissal changed the section 1334(c)(2) analysis.

To the extent Alta contends its delay is justified because WattStock's dismissal eliminated any core claims, *see* ECF 107, at 8, its contention is belied by the record. Since removal, Alta has stridently argued that "the claims asserted in the Adversary Proceeding are entirely non-core."  ECF 3, at 6.  Alta provides no reason why it couldn't have advanced that same argument upon removal in a section 1334(c)(2) motion instead of a motion to withdraw the reference.

## II.    WattStock's Dismissal Does Not Support Discretionary Remand, Either.

Given the significant progress the parties have made (and are making) towards trial over the past eighteen months in federal court under federal rules, equity demands that Alta's request for discretionary remand be denied as well.  Alta argues, and the bankruptcy court concluded, that remand is warranted by applying a test designed to assess at the time of removal how close a given set of state-law claims are to the underlying bankruptcy and whether they should be litigated in bankruptcy court or state court.  That test does not apply here.  Not only is this case over a year out from removal but everyone agrees it doesn't belong in bankruptcy court.  Using a more relevant test to assess the equities, such as the one courts use to assess whether

to remand pendent claims, makes clear that equity favors federal court.  *See*, *e.g.*, *Doddy*, 101 F.3d at 455–56 & n.3 (analyzing "the principles of economy, convenience, fairness, and comity" in assessing whether to remand claims in a bankruptcy case that "ceased being bankruptcy-related").

### A.  Remand Would Inequitably Cause Delay and Prejudice.

The fundamental error in the bankruptcy court's discretionary-remand analysis can be summed up in a single quote:  "very little of substance has happened since removal."  R&R 2.  Even a cursory glance at the *160 entries* on the bankruptcy court's docket promptly dispels that illusion.  In the eighteen months that this case has been in federal court, the parties have engaged in significant litigation, which has meaningfully progressed this case toward trial—both in the ether, and especially when compared to the proceeding in the state court.

Take the state court first:  Only six months elapsed between when Alta filed its third-party complaint against GE and when the automatic stay took effect.  During those six months, two things happened:  (1) the parties litigated GE's motion to dismiss (which was denied in a single-sentence order); and (2) GE filed its answer. That's it.

In the year and a half that the parties have been in federal court, the parties did all of those things, too.  They fully litigated GE's motion for judgment on the pleadings, GE filed counterclaims, and Alta answered.  ECF 31, 39, 40, 48 (12(c) motion); ECF 128, 134 (counterclaims and answer).  But that's not all—not even close.

As explained above, in compliance with and reliance on the federal rules, the parties have engaged in significant discovery and discovery-related motion practice, which have meaningfully advanced this case toward trial.  This includes:  (1) fully litigating GE's successful motion to compel (with which Alta has yet to fully comply); (2) producing over 30,000 documents; (3) deposing seven different witnesses (and making arrangements to depose seven more); (4) serving nearly 19 third-party subpoenas, which have yielded the production of another 6,000 documents and will lead to at least four separate third-party depositions, including some out-of-state witnesses; and (5) identifying experts who are working on this matter, as required by the Stipulated Protective Order in this case.  ECF 65, 71, 72, 75 (motion to compel).

As recently as March, the parties were on pace to close discovery in June and start trial in the fall.  Changing course now—eighteen months after removal—and sending this case back to state court (where the parties spent less than six months litigating their claims) would not only further delay the ultimate resolution of this case, but would also sow confusion and prejudice as the parties, and the third-parties that have been subpoenaed, attempt to navigate the effects of being subject to a state procedural regime with different rules and requirements.

For example, GE currently has 16 out-of-state subpoenas outstanding.  If this case is sent back to state court, GE may need to domesticate and reissue every one of them to comply with the rules of each foreign jurisdiction.  *E.g.*, Cal. Civ. Proc. Code

§ 2029.300.[5] This will waste time and money, and will serve only to delay the close of discovery. Similarly, the unanswered discovery requests GE has propounded on Alta may need to be propounded again in state court, which will restart the time Alta has to respond—further delaying the close of discovery.

Moreover, the parties have already conducted seven depositions (five for Alta, and two for GE) under the federal seven-hour time limit. The parties are actively working to schedule six more. Each deposition will be governed by a different, six-hour time limit if the case is remanded. *Compare* Fed. R. Civ. P. 30(a), *with* Tex. R. Civ. P. 199.5(c). The same is true when it comes to experts—GE (presumably, like Alta) has already invested substantial resources in having its expert prepare a report, which is required under the federal rules but is optional in state court absent a court order. *Compare* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring a "complete statement of all [expert] opinions"), *with* Tex. R. Civ. P. 195.5(a)(3) (requiring "general substance" of expert opinions) *and* Tex. R. Civ. P. 195.5(b) ("If the . . . opinions of an expert have not been recorded and reduced to tangible form, the court may order these matters reduced to tangible form and produced in addition to the deposition").

To Alta, the delay and prejudice associated with remand are worth it if it means staying out of federal court for summary judgment. That much is clear from the timing of Alta's remand motion. The only real change since Alta originally moved

---

[5] Domesticating GE's third-party subpoena against an individual in Alabama will be particularly onerous, given that Alabama prohibits litigants in states that haven't adopted the Uniform Interstate Depositions and Discovery Act (UIDDA) from using its simplified procedures. *See* Ala. Code § 12-21-406. Because Texas is a non-UIDDA state, GE may need to engage local, Alabama counsel to seek a commission from an Alabama court.

to withdraw the reference is that discovery has revealed fatal flaws in Alta's claims and ample support for GE's counterclaims.  And that trend should continue whenever Alta produces the documents that the bankruptcy court compelled it to produce *six months ago*.  *See* ECF 75.  With the federal-court deadline for dispositive motions in sight, Alta has determined that its only hope of keeping its claims alive until trial is to have those motions adjudicated in state court.

But at the end of the day, there is nothing equitable about imposing additional delay, or changing the rules of the game mid-stream, particularly given that the parties have made their strategic decisions and incurred a variety of costs on the understanding that this case would be litigated in federal court under the federal rules.  And it's even less equitable to do so based purely on Alta's changed forum preference.

### B.    Alta Argues, and the Bankruptcy Court Concluded, That Remand Is Appropriate by Misapplying an Inapposite Test.

As the preceding analysis makes clear, equity favors keeping this case in federal court—where it has been actively litigated for the past eighteen months (three times as long as the parties litigated their claims in state court).  Alta and the bankruptcy court come to the opposite conclusion only by relying on a judicially created fourteen-factor test designed to help courts assess whether a case belongs in bankruptcy court or state court.

But that test provides little guidance where, as here, everyone agrees the case does *not* belong in bankruptcy court.  Indeed, the only issue in dispute here is whether the case belongs in state court or in federal *district* court.  The majority of the factors

that counsel in favor of remand to state court equally counsel in favor of withdrawing the reference and keeping the case in federal court, including that the case: (1) "will have no impact on the administration of a bankruptcy estate," (2) will have "no impact on any distributions made to any creditor," and (3) has "absolutely no 'relatedness' to a bankruptcy case." *Compare* R&R 8, *with In re EbaseOne Corp.*, 2006 WL 2405732, at *2 (Bankr. S.D. Tex. June 14, 2006) (assessing—on motion to withdraw the reference—whether (1) "promotion of uniformity in bankruptcy administration will be achieved"; (2) "there will be economical use of debtors' and creditors' resources"; and (3) "the underlying lawsuit is a core or non-core proceeding") (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998–99 (5th Cir. 1985)).  Which court this case will ultimately be tried in should not turn on which contemporaneously filed motion—to remand or to withdraw the reference—is decided first.

Compounding that fundamental error, the bankruptcy court also misapplied several of the fourteen-factor test's key non-bankruptcy-related factors.   Most egregious is the bankruptcy court's bald assertion that "very little of substance has happened since removal."  R&R 2.  As explained above in detail, that's simply not the case.[6]

The bankruptcy court also conflated jurisdiction with removability, suggesting there is no basis for federal jurisdiction other than section 1334(b) because the case

---

[6]  Similarly, the bankruptcy court repeatedly mentioned that the case had been in state court for "17 months."  R&R 2, 8.  But the state court presided over Alta's claims against GE for only 6 months— Alta waited 8 months to bring its claims against GE, and the case was dormant for 3 months after the automatic stay went into effect.

cannot presently be removed on diversity grounds.  R&R 6–7; *see* 28 U.S.C. § 1446(c).

But there's no dispute that GE and Alta are diverse and the amount in controversy

exceeds $75,000.  *See supra*, pg. 12; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64–66, 73

(1996) ("jurisdictional defect was cured" when non-diverse defendant was dismissed

four years after suit was filed).  And, in assessing the equities, what matters is

whether this case *could* be in federal court on its own (that is, absent bankruptcy

jurisdiction)—not whether it could have been removed when it was first filed in state

court (or at some other time).  *Cf. GenOn*, 4 F.4th at 539–40; *see also Exxon Mobil

Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005) (discussing the important

role federal courts play as "neutral for[a]" in diversity cases).

　　These factors should weigh heavily against remand.  So too does the parties'

significant motion practice and discovery in federal court under federal rules, and the

undue cost, delay, and prejudice that the parties—but especially GE—will suffer if

the case is sent to state court at this juncture.  Had the bankruptcy court

appropriately weighted (1) the significant litigation that has occurred in federal court

(which received no weight), and (2) the limited remaining connection to WattStock's

bankruptcy (which dominated the analysis), it likely would have concluded that

remand isn't warranted.  But that mis-weighting, combined with its erroneous

diversity-jurisdiction analysis led the bankruptcy court astray.

### C.　　The Equities Favor Keeping This Case in Federal Court.

　　An assessment of whether this case belongs in federal district court or state

court would not focus almost exclusively on how closely related it is to WattStock's

underlying bankruptcy.  Instead, it would also take into account the additional, independent ground of federal jurisdiction (diversity) and that the parties have been actively litigating this case in federal court for the past eighteen months.  Evaluating which path "best serves the principles of economy, convenience, fairness, and comity," *Doddy*, 101 F.3d at 456, makes clear that this case should remain in federal court.

The Fifth Circuit's *Doddy* decision is instructive.  There, as here, two years after the Doddys' state-law tort claims were removed to federal court because a defendant filed for bankruptcy, that defendant was dismissed from the case.  101 F.3d at 456.  The Doddys then sought to have their claims remanded, first on jurisdictional grounds and, alternatively, on discretionary, equitable grounds.

The Fifth Circuit rejected the jurisdictional argument out of hand, because federal jurisdiction doesn't evaporate mid-suit.  *Id*. at 456 ("The Doddys' contention that the district court automatically lost subject matter jurisdiction over the case when the bankruptcy-related claims dropped out before trial is in error.").

As to equitable remand, the Court explained that "courts should exercise their discretion in a way that best serves the principles of economy, convenience, fairness, and comity."  *Id*. (citing *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 357 (1988)); *see also id.* ("no single factor is dispositive").  In assessing those factors, and affirming that the case should remain in federal court, the Fifth Circuit highlighted many of the same facts that are true here too, including:  (1) the case "had been in litigation for more than two years"; (2) "the parties had already filed more than 300 pleadings"; (3) "most of the parties had already prepared extensive discovery

disclosures in accordance with the Federal Rules of Civil Procedure," and (4) "summary judgment motions on behalf of many of the remaining defendants were pending." *Id.* The Fifth Circuit also noted that none of the Doddys' claims raised "any novel or unsettled issues of state law" and they all "could be readily decided in federal court under established Texas tort principles." *Id*.

So too here. This case has been actively litigated in federal court for eighteen months. This case has 160 docket entries for only three parties (*Doddy* had 300 pleadings, but it also had "almost 30 defendants"). *Id*. at 454. The parties have engaged in extensive discovery under the federal rules and have fully litigated a motion for judgment on the pleadings. And even Alta and the bankruptcy court agree that the claims here are not novel or unsettled. ECF 107, at 11; R&R 7–8.

Moreover, it bears repeating that, when this case was removed eighteen months ago, Alta not only declined to seek remand—it affirmatively asked *this Court* to adjudicate the rest of the case itself. ECF 3 (motion), 45 (order).[7] And Alta still hasn't explained what's changed since then—other than eighteen months of active litigation in federal court—that would require sending the case to state court, other than the fact that the parties are on the precipice of dispositive motion practice.

---

[7] Nothing prevented Alta from moving to remand the whole case eighteen months ago or, at a minimum, at least its claims against GE, which were as divorced from WattStock's bankruptcy then as they are now. *See In re Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996) ("A court, however, may abstain at its discretion from deciding either core or non-core proceedings"); *see also* ECF 3, at 5, 9–10 (asking, in the alternative, to split its claims between bankruptcy court and this Court: "the reference [should] be immediately withdrawn in part as to all claims asserted by Alta Power against non-debtor GE").

That's no reason to upset settled expectations and further delay the ultimate resolution of this case.

*     *     *

As Alta said eighteen months ago, this Court is "well-suited" to hear the parties' "complex, non-bankruptcy claims and legal issues." ECF 3, at 9. That is no less true today than it was then. Accordingly, this Court should grant GE's motion to withdraw the reference, deny Alta's motion to remand the case, and clear the way for the parties to promptly proceed toward trial.

CONCLUSION

For these reasons, the Court should grant GE's motion to withdraw the reference, deny Alta's motion to remand the case to state court, and reject the bankruptcy court's report and recommendation.

Dated:  May 10, 2023                    Respectfully submitted,


                                        /s/  *Andrew LeGrand*
                                        John T. Cox III (Tex. Bar No. 24003722)
                                        Andrew LeGrand (Tex. Bar No. 24070132)
                                        Bradley G. Hubbard (Tex. Bar No. 24090174)
                                        Michael A. Zarian (Tex. Bar No. 24115978)
                                        GIBSON, DUNN & CRUTCHER LLP
                                        2001 Ross Avenue, Suite 2100
                                        Dallas, TX  75201
                                        Tel:  214.698.3100
                                        *TCox@gibsondunn.com*
                                        *ALegrand@gibsondunn.com*
                                        *BHubbard@gibsondunn.com*
                                        *MZarian@gibsondunn.com*


                                        Robert Klyman (*pro hac vice* forthcoming)
                                        GIBSON, DUNN & CRUTCHER LLP
                                        333 South Grand Avenue
                                        Los Angeles, CA  90071
                                        Tel:  213.229.7562
                                        *RKlyman@gibsondunn.com*

                                        *Counsel to General Electric International, Inc.*

GE's Objection to Report and Recommendation – Page 25

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this filing has been served on counsel of

record pursuant to the Federal Rules of Civil Procedure.

/s/  *Andrew LeGrand*
*Andrew* LeGrand

*Attorney for General Electric International, Inc.*