IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ALTA POWER LLC,**<br>   *Plaintiff/Counter-Defendant,*<br><br>v.<br><br>**GENERAL ELECTRIC INTERNATIONAL, INC., n/k/a GE VERNOVA INTERNATIONAL LLC, d/b/a GE POWER SERVICES,**<br>   *Defendant/Counter-Plaintiff.* | Case No. 3:23-CV-270-X |

**GE VERNOVA INTERNATIONAL LLC'S
AMENDED ANSWER AND COUNTERCLAIM TO ALTA POWER'S FIRST AMENDED
COMPLAINT**

Defendant/Counter-Plaintiff GE Vernova International, LLC ("GE") answers Alta Power LLC's First Amended Complaint and provides its counterclaim and affirmative defenses to Plaintiff/Counter-Defendant's claims as follows:

**I. SUMMARY OF ACTION**

1.  GE denies the allegations in Paragraph 1.

2.  GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 2. To the extent a response is required, GE denies the allegations of Paragraph 2 as stated.

3.  GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in the first sentence of Paragraph 3. GE denies the remaining allegations in Paragraph 3.

4.  GE denies the allegations in Paragraph 4.

## II. PARTIES

5. GE admits that Alta Power was the Defendant in the action originally filed by WattStock (the original Plaintiff and Counter-Defendant) and that Alta Power has already appeared.

6. GE denies the first sentence of Paragraph 6. GE Vernova International LLC is a limited liability company whose sole member, GE Vernova International Holdings, Inc., is a Delaware corporation with its principal place of business in Massachusetts. GE admits it has already appeared in the case.

## III. VENUE AND ALLEGATIONS

7. GE admits that this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

8. GE admits that the Court has personal jurisdiction over GE.

9. GE admits that venue is proper in this district and division.

## IV. FACTUAL ALLEGATIONS

### A. Alta Power's Business

IV.A  GE denies heading A of Alta's factual allegations because it implies that Paragraphs 10 through 17 accurately describe Alta's business.

10. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 10. To the extent a response is required, GE denies the allegations of Paragraph 10 as stated.

11. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 11. To the extent a response is required, GE denies the allegations of Paragraph 11 as stated.

12. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 12. To the extent a response is required, GE denies the allegations of Paragraph 12 as stated.

13. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 13. To the extent a response is required, GE denies the allegations of Paragraph 13 as stated.

14. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 14. To the extent a response is required, GE denies the allegations of Paragraph 14 as stated.

15. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 15. To the extent a response is required, GE denies the allegations of Paragraph 15 as stated.

16. GE denies the allegations in Paragraph 16.

17. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 17. GE denies the allegations in the second sentence of Paragraph 17. To the extent any further response is required, GE denies each and every allegation in Paragraph 17.

**B. GE Aero TRUEPackage™**

IV.B   GE denies heading B of Alta's factual allegations because it implies that paragraphs 18 through 22 accurately describe TRUEPackage.

18. GE denies the allegations in the first three sentences of Paragraph 18 except to admit that it is a supplier of aeroderivative gas turbines and that it has made money by selling new turbines and servicing them. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in the final sentence of Paragraph 18. Except as expressly

admitted, to the extent any further response is required, GE denies each and every allegation in Paragraph 18.

19. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in the Paragraph 19 except to admit that ProEnergy is one of multiple competitors in the market for servicing LM6000 aeroderivative turbines. To the extent a response is required, GE denies the allegations of Paragraph 19 as stated.

20. GE denies the allegations stated in Paragraph 20 except to admit that GE applied for a trademark for TRUEPackage in August 2019 and holds that trademark.

21. GE denies the allegations in Paragraph 21 except to admit that WattStock has leased space at the Jacintoport facility in Houston, Texas.

22. GE denies the allegations stated in Paragraph 22.

**C. GE persuades Alta Power to reject ProEnergy and instead choose TRUEPackage™.**

IV.C. GE denies the allegations in heading C of Alta's factual allegations.

23. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 23. To the extent a response is required, GE denies the allegations of Paragraph 23 as stated.

24. 24. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in the first sentence of Paragraph 24. GE denies the remainder of the allegations in Paragraph 24 and corresponding footnote 1. To the extent a further response is required, GE denies the allegations of Paragraph 24 and corresponding footnote 1 as stated.

25. GE denies the allegations stated in Paragraph 25.

26. GE denies the allegations stated in Paragraph 26.

27. GE denies the allegations stated in Paragraph 27.

28. GE denies the allegations in Paragraph 28 except to admit that on June 5, 2018, Alta Power's Matt Laterza and Travis West met with Lance Herrington and individuals from WattStock.

29. GE denies the allegations stated in Paragraph 29.

30. GE denies the allegations stated in Paragraph 30.

31. GE denies the allegations in Paragraph 31 except to admit that Lance Herrington sent an email on June 7, 2018 that Paragraph 31 selectively quotes.

32. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 32. To the extent a response is required, GE denies the allegations of Paragraph 32 as stated.

33. GE denies the allegations in Paragraph 33 except to admit that a meeting between GE and Alta occurred on December 18, 2018 that included Lance Herrington.

34. GE denies the allegations stated in Paragraph 34 except to admit (i) that Alta represented it was considering ProEnergy for its project in December 2018, before Alta learned in January and February 2019 that ProEnergy would be an active competitor to Alta in the Texas peaker market, and (ii) that in December 2018, Lance Herington sent an email that is selectively quoted in the final sentence of Paragraph 34.

35. GE denies the allegations stated in Paragraph 35.

36. GE denies the allegations stated in Paragraph 36 and corresponding footnote 2.

37. GE denies the allegations in Paragraph 37 except to admit that a lunch involving Lance Herrington, Alex Babu, and Alta Power occurred at Frank's Americana on February 25, 2019.

38. GE denies the allegations in Paragraph 38 except to admit that the Master Agreement between Alta Power and WattStock appears to have been executed on February 27,

2019 by Alta and WattStock, and that the Master Agreement contains, among other things, a limitation of liability that caps liability at $100,000 and prohibits all claims against a party's "partners … representatives, contractors, or subcontractors" for any "incidental, indirect, or consequential damages arising out of or connected in any way to this agreement."

39. GE denies the allegations stated in Paragraph 39 and corresponding footnote 3.

**D. Unbeknownst to Alta Power, GE lied about its relationship with WattStock.**

IV.D   GE denies the allegations in heading D of Alta's factual allegations.

40. GE denies the allegations stated in Paragraph 40.

41. GE denies the allegations stated in Paragraph 41.

42. GE denies the allegations in Paragraph 42 except to admit that it submitted a letter on GE letterhead signed by Lance Herrington and dated July 31, 2019, to Alta Power that was meant to be sent to Deutsche Bank that is selectively quoted in Paragraph 42, and which (i) contains no references to GE being a "partner" of WattStock; (ii) states GE would consider taking over WattStock's contract only if certain conditions were met, such as that there would be an "absence of any legal … issues" and that "GE and Alta [would be] able to agree to a revised scope of work, associated cost, and terms and conditions"; and (iii) the letter was ultimately rejected by Deutsche Bank as "not offer[ing] the contractual protection we were seeking," because it did not "subject [GE] to an unconditional obligation to step into Wattstock's contract in the event of a Wattstock default."

43. GE denies the allegations stated in Paragraph 43.

44. GE denies the allegations stated in Paragraph 44.

**E. Relying on GE and WattStock, Alta Power pays millions of dollars to acquire various used LM6000 units.**

IV.E   GE denies the allegations in heading E of Alta's factual allegations.

5

45. GE denies the allegations stated in Paragraph 45.

46. GE denies the allegations stated in Paragraph 46 except to admit that WattStock represented that Pete Watson traveled to Turkey in early 2019.

47. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in the first sentence of Paragraph 47. GE denies the remaining allegations stated in Paragraph 47. To the extent a further response is required, GE denies the allegations of Paragraph 47 as stated.

48. GE denies that the alleged letters were sent with "GE's knowledge and consent." GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in Paragraph 48. To the extent a response is required, GE denies the allegations of Paragraph 48 as stated.

49. GE denies the allegations stated in Paragraph 49 with respect to GE's alleged representations. GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in Paragraph 49. To the extent a response is required, GE denies the allegations of Paragraph 49 as stated.

50. GE denies that it represented that the Turkish units "satisfied Alta Power's budgetary requirements." GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in Paragraph 50. To the extent a response is required, GE denies the allegations of Paragraph 50 as stated.

51. GE denies that it "recommended" the "Ethos Unit" for Alta. GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in Paragraph 51. To the extent a response is required, GE denies the allegations of Paragraph 51 as stated.

52. GE denies that it "recommended units" to Alta. GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in Paragraph 52. To the extent a response is required, GE denies the allegations of Paragraph 52 as stated.

53. GE denies that it "identified" the Acarsoy unit for Alta. GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in Paragraph 53. To the extent a response is required, GE denies the allegations of Paragraph 53 as stated.

54. GE denies that it "identified" the Bosen unit for Alta. GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in Paragraph 54. To the extent a response is required, GE denies the allegations of Paragraph 54 as stated.

55. GE denies that it "identified" the Acarsoy unit for Alta. GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in Paragraph 55. To the extent a response is required, GE denies the allegations of Paragraph 55 as stated.

56. GE denies that it "identified" the Acarsoy unit for Alta. GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in Paragraph 56. To the extent a response is required, GE denies the allegations of Paragraph 56 as stated.

57. GE denies that it "identified" the Acarsoy or Nuh Cemento units for Alta. GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations stated in Paragraph 57.  To the extent a response is required, GE denies the allegations of Paragraph 57 as stated.

58. GE denies that it "identified" the Bosen unit for Alta.  GE lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations stated in Paragraph 58.  To the extent a response is required, GE denies the allegations of Paragraph 58 as stated.

59. GE denies the allegations stated in Paragraph 59.

60. GE denies the allegations stated in Paragraph 60.

61. GE denies the allegations stated in Paragraph 61.

62. GE denies the allegations stated in Paragraph 62.

63. GE denies the allegations stated in Paragraph 63.

64. GE denies the allegations stated in Paragraph 64.

**F. GE dupes Alta Power into paying it $1.5 million.**

IV.F    GE denies the allegations stated in heading F of Alta's factual allegations.

65. GE denies the allegations stated in Paragraph 65, except that GE admits that an LNTP between Alta and WattStock appears to have been executed on December 23, 2019.  This LNTP is distinct from the GE-WattStock LNTP executed on July 29, 2019.

66. GE denies the allegations in Paragraph 66 except to admit that WattStock represented that Alta paid $1,500,000 under the Alta-WattStock December 2019 LNTP, and that the $1,500,000 total was divided into two payments of $750,000.

67. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 67 regarding the dates of the alleged payments.  GE denies the remaining allegations in Paragraph 67 except to admit that WattStock represented that Alta had

made two payments of $750,000 each under the Alta-WattStock December 2019 LNTP. To the extent a response is required, GE denies the allegations of Paragraph 67 as stated.

68. GE denies the allegations in Paragraph 68 except to admit that in February 2020 the owner of the Nuh Cemento units renewed its earlier request that Alta pay a termination fee of $1.45 million in addition to the purchase price of $6.5 million.

69. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 69. To the extent a response is required, GE denies the allegations of Paragraph 69 as stated.

70. GE denies the allegations stated in Paragraph 70.

71. GE denies the allegations stated in Paragraph 71.

72. GE denies the allegations stated in Paragraph 72.

73. GE denies the allegations stated in Paragraph 73.

**G. By the time GE and WattStock's representations begin to crumble, Alta Power had lost its place in the market.**

IV.G. GE denies the allegations in heading G of Alta's factual allegations.

74. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in Paragraph 74. To the extent a response is required, GE denies the allegations of Paragraph 74 as stated.

75. GE lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated in the first sentence of Paragraph 75. GE denies the allegations stated in the remaining sentences of Paragraph 75, except that GE admits that in July 2020 Alta Power contacted GE, and that Paragraph 75 selectively quotes an August 5, 2020 email from James Canon. Except as expressly admitted, to the extent a response is required, GE denies the allegations of Paragraph 75 as stated.

76. GE denies the allegations stated in Paragraph 76.

**H. GE and WattStock's acts and omissions caused Alta Power to lose tens of millions of dollars of profit.**

IV.H. GE denies the allegations in heading H of Alta's factual allegations.

77. GE denies the allegations stated in Paragraph 77 and corresponding footnote 4.

## V. CAUSES OF ACTION

### COUNT I: VICARIOUS LIABILITY

78. This paragraph incorporates the foregoing paragraphs, and GE incorporates its responses to each and every foregoing paragraph in response to Paragraph 78.

79. GE denies the allegations stated in Paragraph 79.

80. GE denies the allegations stated in Paragraph 80.

81. GE denies the allegations stated in Paragraph 81.

82. GE denies the allegations stated in Paragraph 82.

83. GE denies the allegations stated in Paragraph 83.

84. GE denies the allegations stated in Paragraph 84.

85. GE denies the allegations stated in Paragraph 85

### COUNT II: UNJUST ENRICHMENT (AGAINST GE)

86. This paragraph incorporates the foregoing paragraphs. GE incorporates its responses to each and every foregoing paragraph in response to Paragraph 86.

87. GE denies the allegations stated in Paragraph 87.

88. GE denies the allegations stated in Paragraph 88.

### COUNT III: FRAUD

89. This paragraph incorporates the foregoing paragraphs. GE incorporates its responses to each and every foregoing paragraph in response to Paragraph 89.

90. GE denies the allegations stated in Paragraph 90.

91. GE denies the allegations stated in Paragraph 91.

92. GE denies the allegations stated in Paragraph 92.

93. GE denies the allegations stated in Paragraph 93.

94. GE denies the allegations stated in Paragraph 94.

95. GE denies the allegations stated in Paragraph 95.

## COUNT IV: FRAUDULENT INDUCEMENT

96. This paragraph incorporates the foregoing paragraphs. GE incorporates its responses to each and every foregoing paragraph in response to Paragraph 96.

97. GE denies the allegations stated in Paragraph 97.

98. GE denies the allegations stated in Paragraph 98.

99. GE denies the allegations stated in Paragraph 99.

100. GE denies the allegations stated in Paragraph 100.

101. GE denies the allegations stated in Paragraph 101.

102. GE denies the allegations stated in Paragraph 102.

## COUNT V: NEGLIGENT MISREPRESENTATION

103. This paragraph incorporates the foregoing paragraphs. GE incorporates its responses to each and every foregoing paragraph in response to Paragraph 103.

104. GE denies the allegations stated in Paragraph 104.

105. GE denies the allegations stated in Paragraph 105.

106. GE denies the allegations stated in Paragraph 106.

## COUNT VI: CIVIL CONSPIRACY

107. This paragraph incorporates the foregoing paragraphs. GE incorporates its responses to each and every foregoing paragraph in response to Paragraph 107.

108. GE denies the allegations stated in Paragraph 108.

109. GE denies the allegations stated in Paragraph 109.

110. GE denies the allegations stated in Paragraph 110.

111. GE denies the allegations stated in Paragraph 111.

112. GE denies the allegations stated in Paragraph 112.

113. GE denies the allegations stated in Paragraph 113.

114. GE denies the allegations stated in Paragraph 114.

## COUNT VII: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

115. This paragraph incorporates the foregoing paragraphs. GE incorporates its responses to each and every foregoing paragraph in response to Paragraph 115.

116. GE denies the allegations stated in Paragraph 116.

117. GE denies the allegations stated in Paragraph 117.

118. GE denies the allegations stated in Paragraph 118.

119. GE denies the allegations stated in Paragraph 119.

120. GE denies the allegations stated in Paragraph 120.

## JURY DEMAND

121. GE admits that Alta Power has demanded a trial by jury. GE likewise demands trial by jury.

## PRAYER

GE denies that Alta is entitled to any relief whatsoever from GE.

## COUNTERCLAIM

GE hereby fully incorporates by reference its counterclaim in response to Alta's First Amended Complaint as though fully set forth herein, except to the extent the counterclaim incorporates by reference the affirmative defenses set out exclusively in GE's original state court answer. *In re WattStock, LLC*, No. 21-31488 (Bankr. N.D. Tex. Feb. 17, 2023), Dkt. 128.

## AFFIRMATIVE DEFENSES

As affirmative, separate, and other defenses to the First Amended Complaint asserted against GE, GE states as follows. By including the below affirmative defenses, GE expressly does not assume the burden of proof on matters where it has no such burden. GE's affirmative defenses do not alter that Alta retains the burden of proof on, among other things, establishing (1) the extent to which GE's purported actions caused Alta's harms, (2) the extent of any damages Alta claims to have suffered, and (3) that its lost profits claim is reasonably certain. GE specifically reserves the right to restate, re-evaluate, or recall any defenses and to assert additional defenses as necessary as this litigation proceeds:

1. Alta's claims for damages for incidental, indirect, or consequential losses and for punitive or exemplary damages are barred by the limitations of liability contained within the contract documents relating to the transactions and occurrences described in the First Amended Complaint, including but not limited to Article 9 of the Master Agreement.

2. Alta's claims for damages in excess of $100,000 are barred by Article 9 of the Master Agreement.

3. Alta's claims are barred, in whole or in part, because any damage, loss, or liability alleged must be reduced, diminished, or barred in proportion to the wrongful or negligent conduct of persons or entities other than GE—including Alta for negligently planning its project,

engineering, procurement, and construction ("EPC") contractors such as International Turbines for offering pricing that could not be realized and on which Alta relied, WattStock for its purported misrepresentations, and the owners of the Turkish units for purportedly hiding their intentions to demand Alta pay certain fees in addition to the purchase prices until late into Alta's process for purchasing used LM6000s—under the principles of proportionate responsibility, equitable allocation, recoupment, set-off, comparative causation, and/or comparative fault.

4.      Alta's claims of lost profits are barred by Alta's failure to mitigate its damages by continuing to make reasonable efforts to seek to enter the ERCOT peaker market throughout the time for which Alta claims lost profits.

5.      Alta's claims for damages for the "$10 million wasted dollars" it spent on the project are barred, in whole or in part, based on Alta's mitigation of damages in recycling project materials into future projects, including its planned solar projects.

6.      Alta's claims are barred, in whole or in part, based on the superseding intervening cause of Alta's inability to attract financing for its project at any time between May 2018 and July 2022 due to reasons that were either within Alta's control or unrelated to GE, including: (1) that Alta chose to employ two key employees with non-competes with a competitor despite being aware of the risk that the competitor might threaten a lawsuit that could derail Alta's financing; (2) that Alta remained thinly capitalized and failed to attract sufficient equity; (3) that Alta earned a reputation for disorganization in the financial world based on its flawed business models, lender presentation materials, budgets, and the poor execution of its financing efforts; (4) that Alta's leadership team was inexperienced with project development; and (5) that the effect of COVID-19 diminished Alta's ability to obtain financing throughout 2020 and 2021.

7. Alta's claims based on the effects of purportedly undisclosed liabilities of the Turkish units to Alta's project budgets are barred, in whole or in part, based on the superseding intervening cause of Alta's large increases in EPC costs beyond what Alta expected at the time it entered the Master Agreement.

8. Alta's claims related to its consideration of a proposal from ProEnergy are barred, in whole or in part, based on the superseding intervening cause of Alta's realization that ProEnergy would be a competitor in the ERCOT peaker market.

9. Alta's claims for lost profits during Winter Storm Uri are further barred, in whole or in part, based on additional superseding intervening causes that eliminate or limit any lost profits, including the following: (1) that the temperature and humidity conditions during Winter Storm Uri presented significant risk of icing of the LM6000s, freezing of certain other equipment at Alta's plants, and freezing of gas pipelines leading to Alta's plants, and Alta failed to plan for or invest sufficiently in anti-icing, winterization, gas storage, or firm gas transportation needed to produce power during this time; and (2) that Alta's project relied on heat rate call options that called for up to 95% of the capacity Alta could generate to be available to a counterparty, which eliminated Alta's ability to earn peaking price premiums during the storm and presented downside risk in which Alta would need to cover by purchasing power on the open market at peak pricing.

10. Alta's claim for exemplary damages is limited by Texas Civil Practice and Remedies Code section 41.008.

11. Alta assumed the risk of the losses alleged in the First Amended Complaint including because: (1) it understood that the LM6000 units it was targeting would have purchase prices and refurbishment costs that would vary based on the conditions of the equipment, the scope of refurbishment, and the pricing the owners of the equipment would accept; (2) it understood that

15

by selecting TRUEPackage for LM6000 acquisition and refurbishment and outside contractors to perform EPC work instead of ProEnergy to perform all the functions of acquisition, refurbishment, and EPC, Alta might ultimately receive less favorable pricing than if it had chosen ProEnergy; and (3) Alta understood that its project might ultimately fail because it would be unable to receive financing for reasons unrelated to anything GE or WattStock might do.

12. Alta's claims are barred by the economic-loss rule because Alta seeks to recover in tort for claims for which contracts—specifically, the Master Agreement and the Alta-WattStock Limited Notice to Proceed—cover the substance of the dispute and the loss is economic in nature.

13. Alta's claims based on WattStock's actions are barred by waiver or release based on Alta's dismissal of its claims against WattStock with prejudice.

14. Alta's claim of tortious interference with prospective business relations are barred, in whole or in part, because GE's actions in seeking to compete with ProEnergy are legally justified and privileged.

15. Alta's claims are barred by the Statute of Frauds.

16. Alta's claims are barred or waived by the contracts, to the extent they exist, between Alta and WattStock and/or Alta and GE.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant GE denies that Plaintiff is entitled to any relief whatsoever and respectfully requests: (a) Alta takes nothing from its action; (b) this Court dismiss Alta's claims with prejudice; (c) this Court assess costs and fees against Alta; and (d) this Court award GE such other and further relief to which it may be justly entitled.

Dated:  February 24, 2025

Respectfully submitted,

 /s/   *Andrew LeGrand*
John T. Cox III (Tex. Bar No. 24003722)
Andrew LeGrand (Tex. Bar No. 24070132)
Matthew Capoccia (Tex. Bar No. 24121526)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX  75201
Tel: 214.698.3100
*TCox@gibsondunn.com*
*ALegrand@gibsondunn.com*
*MCapoccia@gibsondunn.com*

*Attorneys for General Electric International, Inc. n/k/a GE Vernova International LLC*

## **CERTIFICATE OF SERVICE**

I certify that on February 24, 2025, a true and correct copy of the foregoing document has been served on counsel of record pursuant to the Federal Rules of Civil Procedure.

                                              */s/   Andrew LeGrand*
                                                Andrew LeGrand