IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ALTA POWER LLC,** *Plaintiff/Counter-Defendant,* <br><br> v. <br><br> **GENERAL ELECTRIC INTERNATIONAL, INC., n/k/a GE VERNOVA INTERNATIONAL LLC, d/b/a GE POWER SERVICES,** *Defendant/Counter-Plaintiff.* | Case No. 3:23-CV-270-X |

**GE VERNOVA INTERNATIONAL LLC'S BRIEF IN SUPPORT OF ITS
OPPOSED EMERGENCY MOTION TO COMPEL DISCOVERY
AND FOR RULE 37 SANCTIONS AND TEMPORARY STAY**

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................... 1

II.    BACKGROUND ................................................................................. 2

III.   LEGAL STANDARD ........................................................................ 11

IV.   ARGUMENT .................................................................................... 12

      A.   Motion to Compel: The Court should compel Laterza and Mars to comply with their subpoenas and Alta to produce all of Laterza's responsive documents that were previously withheld based on privilege. ................................................................................... 12

      B.   Motion for Sanctions: The Court should bar Mimms from testifying about materials that were altered or late produced and grant GE additional time to serve responding expert reports. ....................... 16

      C.   Motion to Stay: The Court should grant a temporary stay pending resolution of this motion. ..................................................................... 20

      D.   Attorneys' Fees ............................................................................. 21

      E.   Status Conference ......................................................................... 22

V.    CONCLUSION ................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Charalambopoulos v. Grammer,
  2018 WL 514253 (N.D. Tex. Jan. 23, 2018) ......................................................... 20

Cooper v. Meritor, Inc.,
  2018 WL 10467776 (N.D. Miss. Feb. 7, 2018) ................................................ 13, 15

Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC,
  2018 WL 3655574 (N.D. Tex. July 16, 2018) ....................................................... 11

Garcia v. Patton,
  2015 WL 13613521 (D. Colo. July 9, 2015) .......................................................... 14

Kim v. Nationwide Mut. Ins. Co.,
  614 F. Supp. 3d 475 (N.D. Tex. 2022) .................................................................. 19

Landis v. N. Am. Co.,
  299 U.S. 248 (1936) ................................................................................................ 20

Luminara Worldwide, LLC v. RAZ Imports, Inc.,
  2016 WL 6774231 (D. Minn. Nov. 15, 2016) ........................................................ 13

McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,
  894 F.2d 1482 (5th Cir. 1990) ............................................................................... 11

Miramore Tr. v. United Van Lines, LLC,
  2017 WL 661374 (N.D. Tex. Feb. 17, 2017) ......................................................... 20

Moore v. CITGO Ref. & Chemicals Co., L.P.,
  735 F.3d 309 (5th Cir. 2013) ................................................................................. 17

PacifiCorp v. Nw. Pipeline GP,
  879 F. Supp. 2d 1171 (D. Or. 2012) ...................................................................... 12

Richmond v. SW Closeouts, Inc.,
  2016 WL 4368305 (N.D. Tex. Aug. 16, 2016) ...................................................... 21

United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,
  2019 WL 6792774 (S.D. Miss. Dec. 12, 2019) ..................................................... 12

Samsung Elecs. Am., Inc. v. Yang Kun Chung,
  321 F.R.D. 250 (N.D. Tex. 2017) .......................................................................... 11

Sterling v. United States,
  2020 WL 2425648 (N.D. Tex. May 12, 2020) ....................................................... 19

Trading Techs. Int'l, Inc. v. IBG,
  2020 WL 12309208 (N.D. Ill. Sept. 14, 2020) ...................................................... 12

*United States v. Sierra Pac. Indus.*,
    2011 WL 2119078 (E.D. Cal. May 26, 2011) .................................................. 12, 13

*Varga v. Wells Fargo Bank, N.A.*,
    2020 WL 11931111 (N.D. Tex. Jan. 21, 2020) ...................................................... 14

*Welsh v. Correct Care Recovery Sols.*,
    2023 WL 9691861 (N.D. Tex. Sept. 12, 2023)....................................................... 18

**Rules**

Fed. R. Civ. P. 26(b)(1)............................................................................................. 11

Fed. R. Civ. P. 37(a)(1)............................................................................................. 11

Fed. R. Civ. P. 37(a)(3)(B)........................................................................................ 11

iii

## I.    INTRODUCTION

Alta recently designated four experts: Matthew Laterza, William Mars, Quentin Mimms, and Eric Rodriguez. Deficiencies in three of these experts' disclosures—and Alta's refusal to cure them—require the Court's immediate intervention. With expert and summary judgment deadlines rapidly approaching, GE moves on an emergency basis and requests a temporary stay of the deadlines remaining in this case pending the Court's resolution of this motion.

To begin with, two of Alta's experts have percipient knowledge of the facts underlying this case. One of them (Matthew Laterza) is Alta's very own Rule 30(b)(6) corporate representative and served as Alta's Chief Financial Officer during the relevant period. The other (William Mars) interfaced with Alta as an executive at a company called ProEnergy just as the events giving rise to this litigation were taking place. The story of ProEnergy and the role that it played (or didn't play) is central to Alta's case—and is the basis for Alta's outsized claim for about $400 million in lost profits. Because of biases that can emerge when percipient witnesses testify as designated experts, case law holds that materials considered by these witnesses are generally discoverable—and that a party waives otherwise-applicable privileges over these materials when it chooses to designate percipient witnesses as experts. GE therefore seeks to compel compliance with subpoenas seeking the production of documents and communications that Laterza and Mars considered in connection to their designation as experts for Alta, including their communications with Alta's counsel. Alta should also be ordered to produce all of Mr. Laterza's documents and

1

communications that are responsive to any discovery request served by GE in this case but were withheld as privileged.

Additionally, Alta expert Quentin Mimms's report relies on documents that have been altered and were produced late outside the discovery period in direct violation of Judge Horan's October 10, 2024 order granting GE's motion to compel. Dkt. 66.  By way of example: Alta's counsel admitted that Alta recently altered a "ledger" document that Alta never produced in discovery, even though the ledger contained terms that this Court ordered Alta to search for and produce.  The ledger now serves as Alta's primary evidence for over $6 million in reliance damages.  All in all: 56 of Mimms's late-produced reliance documents contain search terms called for by GE's request for production on reliance damages (RFP 118), 32 contain search terms that Alta represented to Judge Jernigan in October 2022 that it had already run, and ***28 contain the specific search terms that Judge Horan ordered Alta to apply in October 2024***.  APP8–16, 24.  Flouting the Court's order granting GE's motion to compel is sanctionable, and the Court should bar Mimms from relying on these late produced or altered documents.  To make matters worse, Alta failed to sufficiently identify over 80 publicly available reliance documents until March 4, 2025, seven days after Alta's deadline to designate its experts.  Thus, GE further requests that the Court extend GE's deadline to serve its responsive expert reports by a commensurate seven days.

## II.    BACKGROUND

This case arises from Alta's failed efforts to build peaker power plants using refurbished aeroderivative gas turbines—large machines adapted from jet engines.

2

The crux of Alta's claim is that GE and WattStock (no longer a party to this case) orally promised, but failed to deliver, "up to nine [fully refurbished aeroderivative packages] at $10 million or less each," and that GE orally promised to "fulfill all of the obligations that WattStock owed to Alta" under a contract between WattStock and Alta. APP32, 35 (Laterza 30(b)(6) Dep. Tr. Vol. I 40:8–10, 57:9–18). (In reality, GE and Alta did not enter into any contracts other than a Nondisclosure Agreement that made clear that any further "relationship or transaction" would require a signed writing, APP42 (NDA at 3)). Alta alleges that had it not been for these oral promises, it would have chosen to procure aeroderivative gas turbines from a different company, ProEnergy; it would have secured sufficient financing to purchase and deploy these units; and it would have reaped outsized profits during the 2021 Winter Storm Uri, totaling around $400 million.

To construct this narrative, Alta designated four experts on February 25, 2025. Three of them are at issue in this motion: Matthew Laterza, William Mars, and Quentin Mimms. Alta designated Laterza as a non-retained expert to opine on the peaker power business in the Texas ERCOT market, the timing of Alta's heat rate call options ("HRCOs"), and Alta's market strategy.[1] APP61. Alta formally designated William Mars as a "retained" expert to opine on "ProEnergy's offerings and capabilities, especially with respect to refurbished LM6000 units that ProEnergy

---

[1] HRCOs are financial instruments that power purchasers use to hedge against changing market prices for electricity, and that power generators use to ensure a steady stream of income despite those fluctuating market prices. Because HRCOs generate revenue for producers (and narrow the range of returns as electricity prices fluctuate), the timing of Alta's HRCO bears on when Alta could have earned revenue, and how much, from its failed projects.

could have sold to a customer, how long it would have taken ProEnergy to get those refurbished LM6000s connected to the ERCOT grid, and whether those units would have functioned during Winter Storm Uri." APP82 (Mars Report at 4). Finally, Alta designated Quentin Mimms as a retained expert "to analyze and provide opinions regarding financial damages sustained by Alta" from GE's alleged conduct. APP250 (Mimms Report at 1).

***Laterza and Mars.*** Long before Alta designated them as experts, Matthew Laterza and William Mars were involved in the facts that gave rise to this litigation. To begin with, neither party disputes that Laterza is one of the central figures in the facts underlying this case. Together with Alta CEO Bill Phelps, Laterza was one of Alta's "two cofounders." APP97 (Laterza Dep. Tr. 19:9–12). Laterza served as Alta's Chief Financial Officer from Alta's inception in 2017 through the remainder of the relevant period. *Id.* at 19:2–6. Just as the events underlying this case were unfolding, Laterza was one of Alta's primary decision-makers. APP98 (Laterza Dep. Tr. 20:7–20). In fact, Laterza has already testified twice in this case: once as one of Alta's principal fact witnesses, and a second time as its corporate representative. APP30, 94.

As for Mars, the question of whether ProEnergy was a viable alternative source of refurbished gas turbines—and whether ProEnergy would have been able to deliver reliable aeroderivative unit packages in time for Alta to profit off of Winter Storm Uri—are at the heart of Alta's claims. William Mars served as an executive for ProEnergy when Alta and ProEnergy were interfacing about Alta's planned peaker projects, and his disclosed opinions rest almost entirely on his personal experience at

4

the time. Indeed, his own expert report explains that when ProEnergy provided Alta a formal offer for three aeroderivative packages in August 2018, Mars "was Senior Vice President of Fast Track Solutions at ProEnergy." APP85 (Mars Report at 7). Moreover, Mars was "listed as the second point of contact" on that proposal "along with Jeff Canon, ProEnergy's CEO." *Id.* Indeed, Mars emphasizes at the outset in his report that he is "qualified to offer [his] opinion on ProEnergy's offerings and capabilities" specifically based on the "knowledge and experience" that he gained "from [his] time at ProEnergy." APP82 (Mars Report at 4). To the extent any doubt remains, Alta's own amended Rule 26 disclosures put the matter to rest. Alta specifically highlighted that "William Mars . . . ***has personal knowledge related to ProEnergy's negotiations and relationship with Alta Power***." APP4464.

On February 27, two days after Alta designated its experts, GE served document subpoenas on percipient experts Laterza and Mars. APP39–61. The subpoenas sought the production, by March 6, of the documents and communications that Laterza and Mars considered in their capacity as experts for Alta, including their communications with Alta's counsel. *Id.* In an accompanying letter to Alta, GE explained that under the governing caselaw, Alta waived any privileges as to these materials (as well as any previously withheld responsive materials). APP100–03. The letter further explained that while a March 6 deadline was warranted in light of rapidly approaching expert deadlines, GE remained "open to discussing an alternative schedule if it does not interfere with the current case deadlines or is approved by the Court." *Id.* On March 6, Alta declined to produce Laterza's and Mars's documents and served a series of general objections instead. APP120–30. Alta

5

claimed that GE's subpoenas are untimely under the current scheduling order (Dkt. 73)—this, despite the fact that the parties specifically stipulated to extend expert discovery deadlines beyond the deadlines set forth in the scheduling order.  Dkt. 76.

***Mimms.***  As for Mimms, Alta's designation presents sweeping deficiencies on multiple fronts.  *First*, Alta disclosed its reliance materials late.  Alta failed to provide the materials that Mimms considered or relied on in his report when Alta designated him on February 25.  The next day, Alta produced some of those materials.  APP131–32.  But even this production was incomplete—Alta still failed even to produce Mimms's calculations as reflected in his Excel files until February 27.  APP133–40.

*Second*, and more importantly, many of the documents that Alta produced at this late juncture were withheld by Alta in violation of Judge Horan's October 10, 2024 discovery order (Dkt. 66).  Judge Horan had ordered Alta to produce documents containing certain search terms *last year*, by November 7, 2024.  All told, Alta produced 56 documents for the first time on February 26 primarily relating to its reliance damages that were responsive to requests for production and contained search terms Alta either agreed to run or was ordered to run.   Of these documents, 28 contain search terms Alta had refused to run but which Judge Horan ordered applied on October 10, 2024, with Judge Horan's deadline of production of November 7, 2024.  Exhibit B of the Appendix sets forth the full list of these documents.[2]  APP8–16.  By way of example, Alta produced late 14 documents hitting on: (phelps or hart

---

[2]  Exhibit B also lists the 32 documents that hit on the terms that Alta averred to Judge Jernigan in October 2022 that it had run from the outset of its review process and for which it had produced all relevant documents.  *WattStock LLC v. Alta Power LLC*, Case No. 21-03083-sgj (Bankr. N.D. Tex. Oct. 6, 2022), Dkt. 71.

or west or laterza or perkins) and (manager or officer or member or director or owner or founder* or "key employee*" or principal*).  Alta offers no explanation for its failure to produce these documents earlier, despite Judge Horan's order that it do so.[3]

*Third,* to make matters worse, two of these late-produced documents appear to have been altered while this action was pending.  The first of these is a "ledger" document that Mimms cited in his report.  *See*, *e.g.*, APP4455 (Mimms Report at 4208).[4]  This "ledger" concerns the alleged payments Alta made throughout its project and serves as Alta's key evidence for its reliance damages.  The metadata indicates that the document was in existence starting in 2019, but that Mr. Laterza modified it in February 2025.  APP162–175.



---

[3]  The non-production of these documents until February 26 raises serious questions about how Alta went about complying with Judge Horan's order.  A significant number of responsive documents, ordered for production, were wrongfully withheld until Alta self-selected them for its experts' reliance—which leaves one to wonder how many other documents, not selected for expert reliance, are also responsive and ordered for production, yet still remain wrongfully withheld.

[4]  Although unclear based on Alta's untimely correlation table, GE understands this reference to be to Alta 0132491.

And the gaps in the "Statement Index" numbers for the line items in this ledger show that some data had been deleted.

| description | project | amount paid | date paid | Statement Index | |
|---|---|---|---|---|---|
| | Goodlow | 1,510.00 | 7/10/2019 | 2019049 | 49 |
| | G&A | 16,222.50 | 7/10/2019 | 2019050 | 50 |
| | G&A | 3,098.02 | 7/18/2019 | 2019051 | 51 |
| | G&A | 8,652.50 | 7/18/2019 | 2019052 | 52 |
| | | | | Should be 2019053 | 53 |
| | | | | Should be 2019054 | 54 |
| | | | | Should be 2019055 | 55 |
| 129669 Lufkin | | 33,834.45 | 7/18/2019 | 2019056 | 56 |
| | | | | Should be 2019057 | 57 |
| paid online per Matt's instruction | Jacksonville | 50,000.00 | 7/24/2019 | 2019058 | 58 |
| paid online per Matt's instruction | studies | 7,250.00 | 7/26/2019 | 2019059 | 59 |
| paid online per Matt's instruction | studies | 11,500.00 | 7/26/2019 | 2019060 | 60 |
| paid online per Matt's instruction | studies | 11,500.00 | 7/26/2019 | 2019061 | 61 |
| paid online per Matt's instruction | studies | 11,500.00 | 7/26/2019 | 2019062 | 62 |
| 07/09/2019 statement | G&A | 185.85 | 7/31/2019 | 2019063 | 63 |
| | Goodlow | 1,000.00 | 7/8/2019 | 2019064 | 64 |
| July 1-15, 2019 work and per diem | G&A | 6,375.00 | 7/24/2019 | 2019065 | 65 |
| | Jacksonville | 50,000.00 | 8/2/2019 | 2019066 | 66 |
| | Jacksonville | 112,500.00 | 8/8/2019 | 2019067 | 67 |
| | Goodlow | 1,000.00 | 8/2/2019 | 2019068 | 68 |
| July 16-Aug 15, 2019 work and per diem | G&A | 11,272.00 | 8/19/2019 | 2019069 | 69 |
| paid by Matt | G&A | 2,215.00 | 8/20/2019 | 2019070 | 70 |
| | Lufkin | 13,403.09 | 9/10/2019 | 2019071 | 71 |
| | | | | Should be 2019072 | 72 |
| Aug 15-Sept 15, 2019 work per diem | G&A | 11,725.00 | 9/20/2019 | 2019073 | 73 |
| | Jacksonville | 100,000.00 | 10/1/2019 | 2019074 | 74 |
| Sep 16-30 work and per diem, Oct 1-15 work and p | G&A | 11,600.00 | 10/17/2019 | 2019075 | 75 |
| | G&A | 20,876.75 | 11/20/2019 | 2019076 | 76 |
| | | | | Should be 2019077 | 77 |
| | | 48,293.72 | 11/22/2019 | 2019078 | 78 |
| per Bill | Goodlow | 8,000.00 | 11/5/2019 | 2019079 | 79 |
| Oct 15-31 work and per diem | G&A | 5,965.00 | 11/7/2019 | 2019080 | 80 |
| | | 7,500.00 | 11/18/2019 | 2019081 | 81 |
| Nov 1-15 work and per diem | | 5,965.00 | 11/22/2019 | 2019082 | 82 |
| | | | | Should be 2019083 | 83 |
| | | 34,443.50 | 12/5/2019 | 2019084 | 84 |

Alta's counsel has since admitted as much, stating that he "delet[ed]" rows to "remove[] payments that Alta does not seek to recover in this litigation." APP178 (Mar. 4, 2025 J. Golinkin Email). To make matters worse, "ledger" is within the ambit of Judge Horan's October order (the document hits on two sets of search terms covered by Judge Horan's order, *see* APP7–16 (Exhibit B)[5]). In addition to the "ledger" document, Alta also appears to have altered the spreadsheet produced as Alta 0132490. According to its metadata, this spreadsheet was created in 2019 but was

---

[5] The document hits on two sets of search terms covered by Judge Horan's order: (1) "international turbine" or *internationalturbine* or ("ITS" and EPC); and (2) ((gaset or carlos5322@aol.com) and date(january 1 2017 to july 31 2019)) or (carlos5322@aol.com and date(august 1 2019 to july 31 2022)). APP11.

modified by Alta CFO Matthew Laterza on February 21, 2025—just days before Alta disclosed Mimms.  APP220.

*Fourth*, the "ledger" document, in turn, refers to an invoice for $42,000 for International Turbine Services ("ITS"):

| check number | wire | vendor name | invoice number | description | project | amount paid | date paid | Statement Index |
|---|---|---|---|---|---|---|---|---|
| 1531 | | International Turbine Services | 4/30/19 invoice | grub and burn approx 12 acres | Jacksonville | 42,000.00 | 5/13/2019 | 2019032 |

APP163.  The invoice has never been produced despite the fact that this Court ordered Alta to apply the search string ("international turbine" or *internationalturbine* or ("ITS" and EPC)) that should have captured it.  Dkt. 66.  This invoice has independent significance to the case, as it confirms that, contrary to Alta's sworn 30(b)(6) testimony that Alta "never hired ITS as an EPC contractor," Alta did do just that and had even begun employing ITS to prepare its site location in Jacksonville.  APP38 (Laterza 30(b)(6) Dep. Tr. Vol. II 17:23–24).  In GE's motion to compel from June 2024, GE explained that ITS's unreasonably low construction-cost estimates, together with its eventual disqualification during the lending process, led to an expansion in Alta's budgets and the failure of its financing and project.  Dkt. 41 at 32.  Alta's failure to produce the ITS invoice—together with the complete absence of any other produced documents referencing the "grub and burn" at the Jacksonville site or invoice from ITS—raises the question of whether Alta has similarly refused to produce other relevant ITS-related documents, despite the Court's order.[6]

---

[6] As one other example, on January 29, 2025, shortly after Alta's CEO Bill Phelps testified at a deposition that Alta Power had not pursued solar plants, GE wrote to Alta pointing out that certain emails it produced referred to presentations regarding Alta's solar plants from 2021 that had not been produced. APP208. Alta produced them a few days later, and the documents were full of search terms Judge Horan had ordered Alta to apply through the date range of July 31, 2022,

*(Cont'd on next page)*

*Fifth*, the overwhelming majority of Mimms's reliance documents listed as "publicly available" (at least 82 such documents) were impossible to locate at the time they were disclosed (February 25) based on the vague descriptions used by Alta. APP189–91.   Nine additional documents were identified through broken website links, and more still were blocked by paywalls.  APP191–92.  The full list of such documents is set forth in Exhibit S of the Appendix.  Below are just a few examples of Alta's extremely vague descriptions.  APP189.

```
ERCOT AS 2022 Combined
ERCOT AS 2023 Combined
ERCOT AS 2024 Combined
rpt.00013091.0000000000000000.20200101080005.DAMASMCPC_2019
rpt.00013091.0000000000000000.20210101080006.DAMASMCPC_2020
rpt.00013091.0000000000000000.20220101080017.DAMASMCPC_2021
rpt.00013091.0000000000000000.20250101080013.DAMASMCPC_2024
rpt.00013091.0000000000000000.20250202080006.DAMASMCPC_2025
```

On March 2, GE sent Alta a letter detailing the extensive deficiencies related to Alta's designation of Mimms.  APP186–200.  Alta responded two days later but failed to provide any explanation for the delay or deficiencies.  APP176–78.  Alta claimed simply that "GE's complaints are wholly without merit" and blamed GE for failing to "tr[y] very hard to locate these materials."  APP177.  Alta's counsel further represented that it was not withholding any documents—just as it had to Judge Jernigan, and just as it had regarding its production following Judge Horan's October 2024 order—but admitted to modifying the "ledger" spreadsheet.  APP178.

_____

including the search string (solar and (peak* or project* or storage or "MW" or kerens or goodalta or ERCOT and greenfields)). *See* APP221–44 (Exs. 2327, 2328).  The documents contained critical information confirming that Alta Power continued pursuing solar plants through 2021, and these presentations were among the chief evidence GE used at the 30(b)(6) deposition in February 2025 related to the issue of Alta abandoning gas-fired plants to pursue solar plants.

Alta did provide updated links and copies of the publicly available documents, APP177, but despite its late production, Alta's counsel only offered GE's experts an additional 24 hours to respond to Mimms's report.  *Id.*

\*       \*       \*

GE now seeks the Court's intervention.  GE respectfully requests that the Court compel compliance with GE's subpoenas to Laterza and Mars, bar Mimms from testifying about materials that were altered or produced late in direct violation of Judge Horan's October 10, 2024 order, Dkt. 66, and grant GE additional time to serve responding expert disclosures.

## III.    LEGAL STANDARD

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Information "need not be admissible in evidence to be discoverable."  *Id.*  Moreover, "[t]o be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value."  *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017).

If a party fails to produce documents, the party seeking discovery may move to compel.  Fed. R. Civ. P. 37(a)(1), (a)(3)(B).  To defeat a motion to compel, the party resisting discovery must show specifically how each discovery request is not relevant or is otherwise objectionable.  *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*,

2018 WL 3655574, at *6 (N.D. Tex. July 16, 2018). And if a party fails to comply with an order compelling discovery, a court may impose sanctions under Rule 37(b)(2).

## IV.   ARGUMENT

A.   **Motion to Compel: The Court should compel Laterza and Mars to comply with their subpoenas and Alta to produce all of Laterza's responsive documents that were previously withheld based on privilege.**

Laterza and Mars's opinions go directly toward one of Alta's core narratives in this case: that, but for WattStock's and GE's oral promises, Alta would have built and commercialized power plants using aeroderivative packages supplied by ProEnergy in time to profit from Winter Storm Uri. Moreover, Laterza's opinions relate squarely to the peaker power business in the Texas ERCOT market, the timing of Alta's HRCOs, and Alta's market strategy.

Because Alta has waived its privileges as to these documents and communications—including Laterza and Mars's communications with Alta's counsel—Laterza and Mars must comply with their subpoenas under Rule 26, and Alta must produce all Laterza documents previously withheld as privileged.

Under Rule 26, a party's designation of "hybrid fact and expert witnesses" who have percipient knowledge of the underlying facts "serves to waive all applicable privileges and protections for items they considered that relate to the topic of their testimony." *PacifiCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1213 (D. Or. 2012); *see also United States v. Sierra Pac. Indus.*, 2011 WL 2119078, at *10 (E.D. Cal. May 26, 2011) (privileges waived as to "hybrid fact and expert opinion witnesses" who "have percipient knowledge of the facts at issue in [the] litigation"); *Trading Techs.*

*Int'l, Inc. v. IBG*, 2020 WL 12309208, at *2 (N.D. Ill. Sept. 14, 2020) (privileges waived because non-retained expert's "percipient knowledge of [the] case is inextricably linked to the opinions he offers").

Indeed, "[b]oth prior to and after the 2010 amendments [of Rule 26], the designation of a non-reporting expert generally waived applicable privileges for communications between a party's attorney and the non-reporting expert." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 2019 WL 6792774, at *3 (S.D. Miss. Dec. 12, 2019). That is to say, although Rule 26 was amended in 2010 to add additional protections over communications "between counsel and experts who are retained and required under the Rule to provide a report," such protections remain inapplicable to non-retained, "hybrid fact and expert witnesses." *Cooper v. Meritor, Inc.*, 2018 WL 10467776, at *5 (N.D. Miss. Feb. 7, 2018).

Discoverable materials in this context "encompasses material not only used, but generated, seen, reviewed, and/or reflected upon" by the expert. *Luminara Worldwide, LLC v. RAZ Imports, Inc.*, 2016 WL 6774231, at *4 (D. Minn. Nov. 15, 2016); *see also Sierra Pac. Indus.*, 2011 WL 2119078, at *11 ("considered" means "generated, saw, read, reviewed, and/or reflected upon"). Indeed, "the scope of waiver is not limited by subjective questions of whether the expert actually relied on or used the documents and information to which he was exposed in crafting his opinion." *Luminara*, 2016 WL 6774231, at *4. And "[w]hat matters" instead "is simply that [the expert] was exposed to those materials in the first place." *Id.*

Laterza was front and center in the facts leading up to this litigation. Not only did he co-found Alta, Laterza served as Alta's Chief Financial Officer and as one of

13

its primary decision-makers throughout the relevant period. APP97–98 (Laterza Dep. Tr. 19:2–20:25). Laterza has already been deposed twice in this case, both as Alta's corporate representative and as one of Alta's principal fact witnesses. APP30, 94. Moreover, Laterza personally verified every one of Alta's interrogatory answers. *See, e.g.*, APP245–46. Thus, Laterza is by definition a hybrid fact and expert witness who brings to bear percipient knowledge of the underlying facts in the case. Thus, all documents and communications that Laterza generated, saw, reviewed, and/or reflected upon in connection to his designation as an expert (including his communications with Alta's counsel) are discoverable. *See, e.g., Garcia v. Patton*, 2015 WL 13613521, at *4 (D. Colo. July 9, 2015) (attorney-client privilege waived with respect to percipient expert employed by designating party).

Mars, for his part, was one of the ProEnergy executives responsible for interfacing with Alta about Alta's planned peaker projects. When ProEnergy provided Alta with a formal offer in August 2018, Mars was "listed as the second point of contact." APP85 (Mars Report at 7). Mars continued to interface with Alta throughout 2019. For example, Mars emailed Laterza in April 2019 to arrange a discussion about ProEnergy's "EPC Pricing" for Alta. APP204. And in September 2019, Mars emailed Laterza to flag that he had "tried looking at different scenario's [sic] to try to get the numbers down for you." APP202. Moreover, Mars's report makes clear that the sweeping opinions that he advances derive from the alleged "knowledge and experience" that he acquired as a ProEnergy executive during the relevant period. APP82 (Mars Report at 4). Thus, Alta has also waived any privileges as to documents and materials generated, seen, reviewed, and/or reflected upon by Mars.

14

The fact that Alta nominally designated Mars as a *retained* expert rather than a non-retained expert is of no import.  APP61.  The caselaw makes clear that "[a] retained expert witness is an expert who, *without prior knowledge of the facts* giving rise to litigation, is recruited to provide expert opinion testimony, while a non-retained witness's testimony arises not from his enlistment as an expert, but, rather, from his ground-level involvement in the events giving rise to the litigation."  *Varga v. Wells Fargo Bank, N.A.*, 2020 WL 11931111, at *1 (N.D. Tex. Jan. 21, 2020) (cleaned up) (emphasis added).  As Mars himself acknowledges, it is his "ground-level involvement" in the events underlying this case, as a ProEnergy executive, that forms the basis for his opinions; Mars is by definition a non-retained expert.  Indeed, it stands to reason that a party cannot shield discoverable documents considered by a percipient-witness expert merely by designating that witness as retained rather than non-retained.  *See, e.g.*, *Cooper*, 2018 WL 10467776, at *7 ("[T]he fallacy of the assertion that [the expert] has been properly designated as [a retained] expert is plain on its face and necessarily undermines [the defendants'] claim to protections afforded retained/reporting experts under [Rule 26(a)(2)(B)].").

Moreover, Alta's claim that GE's subpoenas are untimely because they are outside the discovery period set out in this Court's scheduling order fails on arrival.  APP113–30; *see also* Dkt. 73 (scheduling order).  Alta forgets that it stipulated to extend expert discovery beyond the dates set out in the scheduling order.  Dkt. 76.

Thus, both Laterza and Mars must comply with their subpoenas and produce the documents and communications that they generated, saw, reviewed, and/or reflected upon in connection to their designation as Alta's experts.

15

**B.**    **<u>Motion for Sanctions</u>: The Court should bar Mimms from testifying about materials that were altered or produced late and grant GE additional time to serve responding expert reports.**

          1.    **The Court should preclude Mimms from relying on late produced or altered materials.**

GE asks that this Court bar Mimms from relying on documents which were altered or produced late and outside of the discovery period in direct violation of Judge Horan's October 10, 2024 order. Dkt. 66.

Alta's deficiencies are egregious. On October 10 2024, Judge Horan granted in part GE's June 14 Motion to Compel Discovery, requiring Alta to "apply the search terms . . . that GE has proposed to target gaps identified in previous search terms and that Alta has not yet used in its document collection and productions to date." Dkt. No. 66 at 2. Flouting Judge Horan's order, Alta produced—as Mimms's reliance documents—***28 documents*** containing the specific search terms that Judge Horan ordered Alta to apply in October 2024. The full list of applicable search terms and documents are set forth in Exhibit B of the Appendix. APP8–16. For example, Alta should have produced 14 documents hitting on the following search terms back in November 2024: (phelps or hart or west or laterza or perkins) and (manager or officer or member or director or owner or founder* or "key employee*" or principal*). APP10–13. And it should have produced 11 documents that hit on: ((gaset or carlos5322@aol.com) and date(january 1 2017 to july 31 2019)) or (carlos5322@aol.com and date(august 1 2019 to july 31 2022)). APP10–13. Instead, Alta chose to wait until the close of discovery to produce documents like these.

16

The most egregious example may be Alta's failure to timely produce the "ledger" document cited in the Mimms report. APP163–64. Not only does the ledger hit on the search terms covered by Judge Horan's order, *see* APP8–16; *see also* Dkt. 66, it also contains an extensive number of search terms that Alta averred to Judge Jernigan in October 2022 that it had run from the outset of its review process and for which it had produced all relevant documents, such as "Goodlow*" (27 references), "WattStock*" (12 references), "Nuh" (1 reference), and "Turkey" (3 references). APP163–64, *see also* APP9–16. Yet, Alta did not produce this ledger until it submitted Mimms's report—contrary to its representations to the Court, and in violation of the October 10, 2024 discovery order. Additionally, Alta's counsel admitted to altering the ledger to remove certain handpicked entries. APP178. Alta for years failed to produce this key document, and still has not produced it in its original, unaltered form in response to GE's discovery requests. To make matters worse, the ledger itself references the missing ITS invoice that should have been produced in response to Judge Horan's order—and Alta has still failed to produce this document. *See supra* at 9.

Rule 37(b)(2) assesses sanctions for a party's failure to comply with court orders. Rule 37(b)(2)(A)(ii) specifically provides that a court may prohibit "the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." And "barring plaintiffs from testifying about damages is a sanction that is expressly permitted by Federal Rule of Civil Procedure 37(b)(2)(A)(ii)." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 318 (5th Cir. 2013). In assessing sanctions, courts in the Fifth Circuit apply four

17

factors: (1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the evidence; (3) the importance of the evidence; and (4) the possibility of curing such prejudice by granting a continuance. *Id.* at 318–19.  Applying these four factors, the Court should impose Rule 37(b)(2) sanctions.

*First*, Alta has provided *zero* explanation for the fact that it produced 28 documents outside of the discovery period in violation of Judge Horan's order. Instead, Alta asserts simply and without any explanation that it "didn't withhold any documents" APP178.  As for manipulation, Alta's counsel has already admitted he "delet[ed]" rows in the ledger document.  *Id.*  *Second*, GE will no doubt suffer significant prejudice as it scrambles to prepare its rebuttal expert on the basis of documents that should have been produced *years ago*.  This will no doubt undermine GE's trial preparation and its efforts to marshal evidence in advance of summary judgment.  *See Welsh v. Correct Care Recovery Sols.*, 2023 WL 9691861, at *5 (N.D. Tex. Sept. 12, 2023) (explaining that disruption to the other party's dispositive motion and/or trial preparation supports a finding of prejudice).  To make matters worse, because these documents were produced after the close of discovery, GE has now forever lost the ability to serve interrogatories or inquire in depositions about these documents.

*Third,* the importance factor favors GE because "any claimed importance [by Alta] merely underscores the need . . . to have complied with the Court's deadlines or at least informed the Court . . . in advance if good faith compliance was not possible." *Id.* at *4 (cleaned up).  *Finally*, a continuance is not an appropriate remedy given that

Alta has withheld these documents for *years*. And a brief continuance cannot unwind the prejudice that arises from a years-long failure to produce documents that GE is entitled to review.

Thus, Mimms must be barred from relying on documents that Alta altered or withheld in violation of Judge Horan's October 10, 2024 order. In addition, the Court should require Alta to immediately produce the missing ITS invoice referenced in the "ledger" document.

### 2. The Court should grant GE additional time to respond to Mimms's report.

The Court should also extend GE's deadline to respond to Mimms's report by seven days in light of Alta's week-long delay in producing the vaguely identified public documents cited in the Mimms report. These included undecipherable descriptions like "ERCOT AS 2022 Combined" and "rpt.00013091.0000000000000000.20200101080005.DAMASMCPC_2019." *See* APP310.

"[S]imply designating an expert witness will not do." *Sterling v. United States*, 2020 WL 2425648, at *4 (N.D. Tex. May 12, 2020). Each expert disclosure for retained experts must comply with Rule 26(a)(2)(B) and thus must include "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them." Courts in this district have broad discretion to impose sanctions in response to deficient expert designations under Rule

26(a)(2)(B). *Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 485 (N.D. Tex. 2022).

The Mimms report, as served on February 25, cited at least 82 publicly available documents that were impossible to locate or identify using the vague descriptions provided by Alta (along with nine documents with broken links and four documents behind a paywall). *See* APP189, 310–13. Only after GE pressed Alta in its March 2 letter did Alta produce copies of these documents, seven days later. APP177. Thus, GE's attorneys and experts were deprived the opportunity to review Alta's vaguely-defined and impossible-to-locate documents until seven days after Alta Mimms's designation. GE therefore requests that the Court extend GE's deadline to serve responding expert reports by a corresponding seven days. While Alta opposes the remainder of this motion, its counsel has indicated that Alta is willing to consider additional time for GE to respond to the Mimms report.

## C.    <u>Motion to Stay</u>: **The Court should grant a temporary stay pending resolution of this motion.**

GE further requests a temporary stay of the deadlines in this case pending the resolution of this emergency motion. This Court "has discretion to stay proceedings on its docket." *Charalambopoulos v. Grammer*, 2018 WL 514253, at *1 (N.D. Tex. Jan. 23, 2018). Indeed, this Court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "The determination of whether to stay proceedings is best determined by weighing the competing interests of the

20

parties and of the Court." *Miramore Tr. v. United Van Lines, LLC*, 2017 WL 661374, at *4 (N.D. Tex. Feb. 17, 2017) (citation omitted).

Expert and summary judgment deadlines are rapidly approaching in this case. The current deadline for rebuttal designation of expert witnesses is March 25, 2025, Dkt. 76, and *Daubert* and summary judgment motions are due on April 17, 2025.  Dkt. 73.  Absent a resolution of the sweeping deficiencies raised in this motion, GE will be unable to adequately depose Alta's experts, prepare rebuttal expert reports, and marshal the evidence necessary to bring a summary judgment motion.  Both Alta and GE will stand to benefit from the orderly disposition of this motion *before* the parties engage in expert depositions for Laterza, Mars, Mimms, and any rebuttal experts. Thus, GE requests a modest and temporary stay of the deadlines that remain pending in this case while the Court considers this motion.

## D.    Attorneys' Fees

GE further requests that the Court order Alta to pay for the time that GE's counsel expended preparing this motion.  "The 'expenses' allowed under Rule 37 include both attorneys' fees and costs reasonably incurred in bringing the motion to compel." *Richmond v. SW Closeouts, Inc.*, 2016 WL 4368305, at *5 (N.D. Tex. Aug. 16, 2016) (citation omitted) (awarding attorneys' fees incurred in bringing motion to compel and request for sanctions).  Uncovering the deficiencies raised in this motion has required GE to expend its finite time and resources combing through Alta's more than 4000 pages of expert materials, attempting (in vain) to identify Alta's vaguely-referenced public documents, reviewing the metadata of Alta's belatedly produced reliance documents to assess whether they were altered, and tracing which specific

21

documents are in violation of Judge Horan's October 10, 2024 order. By forcing GE to engage in these endeavors, Alta has derailed GE's efforts to marshal its arguments and evidence in advance of fast approaching expert, mediation, and summary judgment motion deadlines.

## E.    Status Conference

GE further requests a status conference and an opportunity to apprise the Court of Alta's egregious deficiencies in person.

## V.    CONCLUSION

For these reasons, the Court should grant GE's motion.

Dated:  March 7, 2025                    Respectfully submitted,


                                         /s/ Andrew LeGrand
                                         John T. Cox III (Tex. Bar No. 24003722)
                                         Andrew LeGrand (Tex. Bar No. 24070132)
                                         Matthew Capoccia (Tex. Bar No. 24121526)
                                         GIBSON, DUNN & CRUTCHER LLP
                                         2001 Ross Avenue, Suite 2100
                                         Dallas, TX  75201
                                         Tel:  214.698.3100
                                         TCox@gibsondunn.com
                                         ALegrand@gibsondunn.com
                                         MCapoccia@gibsondunn.com


                                         Attorneys for General Electric International,
                                         Inc. n/k/a GE Vernova International LLC

## **CERTIFICATE OF SERVICE**

I certify that on March 7, 2025, a true and correct copy of the foregoing document has been served on counsel of record pursuant to the Federal Rules of Civil Procedure.

*/s/ Andrew LeGrand*
Andrew LeGrand

## **CERTIFICATE OF CONFERENCE**

I certify that on March 6 and 7, 2025, counsel for GE conferred with counsel for Alta regarding the relief requested in this motion.  Counsel for Alta indicated that it opposes this motion, except to the extent Alta is open to consenting to an unspecified amount of additional time to respond to the expert report of Quentin Mimms.

*/s/Andrew LeGrand*
Andrew LeGrand

23