IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALTA POWER, LLC,<br><br>*Plaintiff/ Counter-Defendant,*<br><br>v.<br><br>GENERAL ELECTRIC INTERNATIONAL INC., d/b/a GE POWER SERVICES,<br><br>*Defendant/ Counter-Plaintiff.* | Case No. 3:23-CV-0270-X |

# REPLY IN SUPPORT OF ALTA POWER, LLC'S
# MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| **JORDAN, LYNCH & CANCIENNE PLLC**<br>Michael Cancienne<br>Texas Bar No. 24055256<br>Joseph W. ("Jeb") Golinkin II<br>Texas Bar No. 24087596<br>1980 Post Oak Blvd., Ste. 2300<br>Houston, Texas 77056<br>Telephone: 713.955.4028<br>mcancienne@jlcfirm.com<br>jgolinkin@jlcfirm.com | **BAKER BOTTS L.L.P.**<br>John Lawrence<br>Texas Bar No. 24055825<br>Ariel House<br>Texas Bar No. 24122827<br>2001 Ross Avenue, Suite 900<br>Dallas, Texas 75201<br>Telephone: 214.953.6500<br>john.lawrence@bakerbotts.com<br>ariel.house@bakerbotts.com |

*Counsel for Plaintiff Alta Power, LLC*

**TABLE OF CONTENTS**

SUMMARY OF REPLY ..................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.     GE's Counterclaims Should Be Dismissed. ............................................................. 2

           A. GE was not an intended third-party beneficiary of the Master Agreement. .................................................................................................. 2

           B. Alta's claims do not fall within the text of Section 9.1(B). ........................ 5

           C. GE's Counterclaims for declaratory relief should also be dismissed because they are merely duplicative of GE's Affirmative Defenses. ....... 9

           D. Alta breached no contract, and GE lacks standing to bring such a claim. 11

II.    Summary judgment is also warranted on GE's Affirmative Defense Nos. 1, 2, 12, 13, 15, and 16. ........................................................................................................ 12

           A. Affirmative Defense Nos. 1, 2, and 16: GE's contractual defenses fail. 12

           B. Affirmative Defense No. 12: The Economic Loss Rule does not apply. 13

           C. Affirmative Defense 13: The WattStock settlement is irrelevant. .......... 14

           D. Affirmative Defense 15: The statute of frauds does not apply to any of Alta's intentional tort claims against GE. ............................................... 15

## TABLE OF AUTHORITIES

**Cases**

*AK FortySeven Recs., Ltd. Co.*,
   2018 WL 8755881, at *8 ...................................................................................................5

*Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*,
   348 S.W.3d 894 (Tex. 2011) ............................................................................................13

*Baylor Univ. v. Sonnichsen*,
   221 S.W.3d 632 (Tex. 2007) ............................................................................................18

*ConocoPhillips v. Graham*,
   2012 WL 1059084, at *6 (Tex. App.—Houston [1st Dist.] March 29, 2012, no pet.) 4, 7, 13, 14

*Consumer Fin. Prot. Bureau v. FirstCash, Inc.*,
   No. 4:21-CV-01251-P, 2024 WL 4706904, at *2 (N.D. Tex. Nov. 7, 2024).....................12

*Corval Builders & Erectors, Inc. v. Markel Am. Ins. Co.*,
   No. 4:21-CV-01268, 2024 WL 4354815, at *5 (S.D. Tex. Sept. 30, 2024).........................6

*Disability Rts. Texas v. Pacillas*,
   690 F. Supp. 3d 654 (W.D. Tex. 2023) ..........................................................................6, 7

*Easom v. US Well Servs., Inc.*,
   37 F.4th 238 (5th Cir. 2022) ..............................................................................................7

*Engle v. Dinehart*,
   213 F.3d 639 (5th Cir. 2000) .............................................................................................9

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
   960 S.W.2d 41 (Tex. 1998) ..............................................................................................18

*Great Lakes Ins., S.E. v. Gray Group Investments, L.L.C.*,
   76 F.4th 341 (5th Cir. 2023) ..............................................................................................7

*Harris v. Houston Methodist Hosp.*,
   No., 01-17-00544-CV, 2018 WL 3233329 (Tex. App.—Houston [1st Dist.] July 3, 2018, pet. denied) ................................................................................................................9

*Meeks v. Mendford Trucking & Oilfield Servs., LLC*,
   No. P:15-CV-00050-DC, 2018 WL 2410993, at *3 (W.D. Tex. Feb. 7, 2018).................12

*Meridian Sec. Ins. v. Morris*,
   No. 5:22-CV-151-RWS-JBB, 2023 WL 5313905, at *3 (E.D. Tex. Aug. 1, 2023)...........11

*Miller v. Target Corp.*,
   854 F. App'x 567 (5th Cir. 2021) ....................................................................................16

*Nextera Energy Mktg. LLC v. Shell Energy N. Am. (US) LP*,
   No. 4:21-CV-02280, 2023 WL 2541964 (S.D. Tex. Mar. 16, 2023) ................................11

*Resolution Trust Corp. v. Kemp*,
  951 F.2d 657 (5th Cir. 1992) ............................................................................. 1, 2

*Samantar v. Yousuf*,
  560 U.S. 305, 130 S.Ct. 2278, 176 L.Ed.2d 1047 (2010) ....................................... 6

*Sanijet Corp. v. Lexor Intern., Inc.*,
  2008 WL 2201451, at *3 (N.D. Tex. May 15, 2008) ............................................ 11

*Stanton Holdings v. First Data Corp.*,
  2006 WL 1343631, at *8 (N.D. Tex. May 16, 2006) ............................................. 2

*Tawes v. Barnes*,
  340 S.W.3d 419 (Tex. 2011) ................................................................................ 4

*Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.*,
  848 S.W.2d 724 (Tex. App.—Dallas 1992, writ denied) ..................................... 4

*United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*,
  819 F. App'x 204 (5th Cir. 2020) ...................................................................... 16

*United States v. Koutsostamatis*,
  956 F.3d 301 (5th Cir. 2020) ............................................................................... 6

*Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*,
  663 S.W.3d 569 (Tex. 2023) ................................................................................ 3

Alta Power, LLC ("Alta") files this Reply in Support of its Motion for Partial Summary Judgment (ECF 110).

## SUMMARY

GE's counterclaims and affirmative defenses rest on a fundamental distortion of this case and the law. Alta is not suing to enforce any contract. Alta has not brought a breach of contract claim. Alta is not relying on the Master Agreement, the LNTPs, or the NDA to seek relief. Rather, Alta's claims sound entirely in tort. Alta seeks to hold GE accountable for a calculated campaign of misrepresentation—false statements about GE's relationship with WattStock, the price and availability of GE turbines, and GE's role in backing the TRUEPackage program—made to induce Alta to abandon its deal with a competitor and contract with GE's supposed "partner," WattStock, instead.

GE's response is to invoke contractual provisions to which it is a stranger. It is undisputed that GE did not sign the Master Agreement, was not a "subcontractor" at the time it was executed, and is not identified by name or by definition within its terms. Yet GE insists it can enforce that agreement as though it were a party. Texas law forecloses that argument. GE cannot invoke liability limitations or damage waivers in a contract it never signed, under a theory of third-party beneficiary status it cannot satisfy.

GE's affirmative defenses and counterclaims merely recycle that error. Alta's claims sound in fraud, not contract. GE could have contracted with Alta. Instead, it duped Alta into contracting with an insolvent entity with which GE had no contractual relationship. GE cannot escape liability for its own misconduct by retrofitting defenses from contracts to which it lacks a sufficient legal connection. The Court should dismiss GE's counterclaims and grant summary judgment in Alta's favor on GE's meritless defenses.

**ARGUMENT**

I. **GE's Counterclaims Should Be Dismissed.**

GE's counterclaims are all based on a series of fictions: (1) GE was an intended third-party beneficiary of the Master Agreement; (2) the parties agreed to waive liability for even intentional torts under the Master Agreement; and (3) the Master Agreement gave unnamed subcontractors the right to *sue* Alta for breach of contract, even though GE points to no authorities holding that a party can waive the right to sue for fraudulent inducement where the contract does not contain a disclaimer of reliance.

A. **GE was not an intended third-party beneficiary of the Master Agreement.**

GE admits it was not WattStock's subcontractor when it engaged in the acts that give rise to Alta's claims.[1] Still, GE argues that Alta still waived its right to recover from GE under the Master Agreement.[2] As discussed below, GE's argument must be rejected for several reasons.

i. <u>GE cannot enforce 9.1(B) because it was not WattStock's "subcontractor" when Alta signed the Master Agreement.</u>

The parties agree that to invoke the Master Agreement, GE must prove that "contracting parties *made* the contract[ ] for the benefit of the third party and *intended* to benefit the third party *at the time the parties entered into the contract*[ ]." *Resol. Tr. Corp. v. Kemp,* 951 F.2d 657, 662 (5th Cir. 1992) (emphasis added). In its Response, GE admits it was not WattStock's subcontractor when Alta executed the Master Agreement, but argues that is "irrelevant" because "[n]othing in the Master Agreement—or Texas law—restricts the group of relevant third parties at the time the Master Agreement was signed."[3]

That is incorrect. In *Stanton Holdings, Inc. v. First Data Corp.*, this court explained that although third-party beneficiaries may be designated categorically, a party cannot enforce those categorical designations unless they can demonstrate they fell within a

---

[1] ECF 116 at 14.
[2] *Id.*
[3] *Id.* at 13.

2

relevant category "at the time the contract was signed." 2006 WL 1343631, at *8 (N.D. Tex. May 16, 2006). GE cannot make this showing because GE admits it was *not* one of WattStock's "subcontractors" "at the time the contract was signed." *Id.* (former "end user" was not a third-party beneficiary because he could not show it was an "end user" *when the contract was executed*).

GE devotes a footnote to attempting to distinguish from *Stanton*, arguing that "the problem [in *Stanton*] was that the plaintiff couldn't show it met the contractual definition of 'end user' at any point while the contract was in effect."[4] But *Stanton* repeatedly and explicitly focuses on the defendant's status "at the time the contract was *signed*":

> While Staton is not mentioned anywhere on the form, Plaintiffs claim that they are an end user subscriber and thus, an intended beneficiary because First Data, by signing the form, assumes liability for the misappropriation of traffic of 'any other end user subscriber." Plaintiffs claim that they are an end user subscriber, however, in their Complaint Plaintiffs allege that the All Eights Number was already taken from them by April of 2001 *when the RespOrg Change Form was signed.* Plaintiffs do not provide any evidence that Staton was an end user subscriber *at the time the RespOrg Change Form was signed*, rather, they characterize Staton as a " 'prior' end user subscriber." As Plaintiffs cannot prove they were an end user subscriber <u>*at the time the contract was signed*</u>, they have failed their burden to show that the "contracting parties *made* the contract[ ] for the benefit of the third party and *intended* to benefit the third party *at the time the parties entered into the contract[ ].*" *Resolution Trust Corp. v. Kemp,* 951 F.2d 657, 662 (5th Cir.1992) (emphasis in original). As such, the Court will not imply third party beneficiary status and Plaintiffs' breach of contract claim fails.

*Id.*

Because GE cannot show that Alta and WattStock intended to directly benefit GE when they entered into a contract which doesn't even mention GE, GE attempts to pivot by pointing to a subsequent amendment of Article 6 of the Master Agreement in 2020.[5] That Amendment, however, did not even reference, much less amend, Section 9 of the Master Agreement. Instead, the parties simply agreed to "amend and restate" Section

---

[4] ECF 116 at 13.
[5] *Id.* at 14.

3

6.2(A) *only*.[6] Put differently, the Amendment did not affect either WattStock or Alta's (or any other entity) rights or obligations under Section 9 of the Master Agreement. In short, GE cannot show that Alta and WattStock entered into the Master Agreement *for GE's benefit,* and GE cannot show that it was among the categories of third-party beneficiaries created by the Master Agreement *when it was executed*. GE is thus legally barred from attempting to enforce the Master Agreement.

### ii. Neither "contractor" or "subcontractor" are sufficiently well defined in the Master Agreement to make GE a third-party beneficiary.

GE's attempts to invoke the Master Agreement also fail for yet another reason: the terms "contractors" and "subcontractors" are too broad to define a specific, discrete, and limited group. GE counters that "it is black letter law that that a party need not be expressly identified by name in the agreement" and that released parties "may be identified in the agreement by a class or category of persons."[7] GE then claims that "Texas Courts have held that the term 'subcontractors' fits that bill."[8]

But GE cites to only one case involving the term "subcontractor," and that case is distinguishable.[9] "Sub-contractor" was *a defined term* in the contract at issue in *Old Orchard*, meaning that the parties specifically agreed to the definition, and the entities that would fall within the scope of that defined term. *Temple EasTex, Inc. v. Old Orchard Creek Partners Ltd.*, 848 S.W.2d 724, 730 (Tex. App.—Dallas 1992, writ denied). But the same is not true here: "subcontractor" is not defined in the Master Agreement. GE also points to no evidence that both Alta and WattStock intended for the undefined term "subcontractor" to apply to *GE* when they entered into that contract.

---

[6] *Id.*
[7] ECF 116 at 14 (quoting *ConocoPhillips v. Graham,* 2012 WL 1059084, at *6 (Tex. App.—Houston [1st Dist.] March 29, 2012, no pet.)).
[8] *Id.*
[9] *Id.* at 14 (citing *Temple EasTex, Inc. v. Old Orchard Creek Partners Ltd.*, 848 S.W.2d 724, 730 (Tex. App.—Dallas 1992, writ denied).

4

By arguing that GE became a "contractor" or "subcontractor" *after* Alta and WattStock entered into the Master Agreement, GE necessarily acknowledges that membership of those classes evolved over time. Given that ambiguity, the presumption against conferring third-party beneficiary should defeat GE's ex-post attempt to bring itself within the Master Agreement. *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 758 (Tex. App.—Fort Worth 2012, pet. denied) (declining to recognize third-party-beneficiary-status to "nondiscrete" group—mineral-rights lessors—that would change when parties executed leases); *AK FortySeven Recs., Ltd. Co.*, 2018 WL 8755881, at *8 (rejecting third-party beneficiary status where "sponsors" were not defined in the contract and could change over time).

### B. Alta's claims do not fall within the text of Section 9.1(B).

GE's counterclaims also collapse at the threshold. The Master Agreement does not bar liability for intentional torts or conduct that GE admittedly undertook outside the scope of any subcontractor relationship with WattStock.

#### i. GE was not one of WattStock's "subcontractors" when it committed the acts that give rise to Alta's damages.

Even if GE could somehow claim the status of a third-party beneficiary under the Master Agreement, that status would not shield GE from liability here. Alta seeks consequential damages for misconduct that occurred *before* the Master Agreement was executed—when GE concedes it was not acting as WattStock's "contractor" or "subcontractor." Section 9.1(B) cannot plausibly be read to grant immunity to a third party for intentional torts it independently orchestrated outside the scope of the contractor-subcontractor relationship, and outside the temporal bounds of the Agreement itself. Yet that is precisely GE's position: that it is entitled to contractual protections for pre-contract conduct, undertaken in its own name, not as WattStock's agent. The law does not permit that result, and neither does the Master Agreement.

5

### ii. The Master Agreement does not apply to GE's intentional torts.

GE's requests for declaratory relief also fail because Section 9.1(B) does not apply to Alta's intentional tort claims against GE. The plain terms of the agreement make clear that Alta and WattStock only waived consequential damages for certain breaches of contractual obligations or other duties, such as "negligence, strict liability, breach of contract, and breach of strict or implied warrantee":

> THIS MUTUAL WAIVER OF CONSEQUENTIAL DAMAGES, *SHALL INCLUDE BUT IS NOT LIMITED TO,* LOSS OF USE, LOSS OF PROFIT, LOSS OF BUSINESS, LOSS OF INCOME, LOSS OF REPUTATION OR ANY OTHER CONSEQUENTIAL DAMAGES THAT EITHER PARTY MAY HAVE INCURRED FROM ANY CAUSE OF ACTION *INCLUDING NEGLIGENCE, STRICT LIABILITY, BREACH OF CONTRACT, AND BREACH OF STRICT OR IMPLIED WARRANTEE.*[10]

GE responds that the word "including" is generally illustrative rather than exhaustive.[11] But as courts have long recognized, an illustrative list may be bounded by the unifying theme of the examples provided. This is the essence of *noscitur a sociis*—the interpretive canon holding that "a word may be known by the company it keeps." *Disability Rts. Texas v. Pacillas*, 690 F. Supp. 3d 654, 678 (W.D. Tex. 2023) (quoting *Samantar v. Yousuf*, 560 U.S. 305, 316–17 (2010); *United States v. Koutsostamatis*, 956 F.3d 301, 307 (5th Cir. 2020)). As Justice Scalia and Bryan Garner explain, this "associated words canon" instructs that "[w]hen several nouns or verbs or adjectives or adverbs—any words—are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." *Antonin Scalia & Bryan A. Garner, Reading Law* at 195.

Here, the term "including" introduces a list of causes of action—"negligence, strict liability, breach of contract, [and] breach of strict or implied warranty"—that plainly share a common feature: none is an intentional tort. That interpretive constraint is consistent with the case law. *See Corval Builders & Erectors, Inc. v. Markel Am. Ins. Co.*, 2024

---

[10] ECF 112, Ex. 24 (Appx. 200) (emphasis added).
[11] ECF 116 at 16.

WL 4354815, at *5 (S.D. Tex. Sept. 30, 2024); *Pacillas*, 690 F. Supp. 3d at 678; *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 244 (5th Cir. 2022).

Nor can GE rescue its argument by insisting that "including" should be read as "including but not limited to." That phrase appears elsewhere in the very same sentence—when referring to types of *damages*—making clear that the drafters knew how to signal open-endedness when they intended to. Where the contract uses both "including" and "including but not limited to," the variation is meaningful. See *Great Lakes Ins., S.E. v. Gray Grp. Invs., L.L.C.*, 76 F.4th 341, 347 (5th Cir. 2023) ("The difference in verbiage is critical because under principles of contract interpretation, a word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning.").

Finally, Section 9.1(A)—Section 9.1(B)'s companion provision—confirms that the parties knew how to draft broadly applicable limitations when they wished to. That provision imposes a $100,000 cap on liability for claims arising directly "under" the Master Agreement:

> IT IS INTENDED THAT THIS LIMITATION [OF $100,000] SHALL APPLY TO *ANY AND ALL LIABILITY* OR CAUSE OF ACTION ARISING UNDER THIS AGREEMENT *HOWEVER ALLEGED OR ARISING*[.][12]

The breadth of that language—"any and all" causes of action, "however alleged"—contrasts with the more limited phrasing of Section 9.1(B), which contains no comparable catchall. That textual silence is dispositive.

In sum, Section 9.1(B) does not bar Alta from recovering consequential damages caused by GE's intentional torts. GE's request for declaratory relief therefore fails as a matter of law.

---

[12] *Id.*

7

### iii. 9.1(A) does not impact Alta's ability to recover from GE under its joint enterprise and ostensible agency principles.

GE attempts to salvage its second request for declaratory judgment by claiming that it "doesn't argue that Section 9.1(A) caps GE's direct liability," but only "that Section 9.1(A) caps how much Alta can recover holding GE vicariously liable for WattStock's conduct."[13]

For multiple reasons, however, GE cannot establish that it is entitled to invoke Section 9.1A of the Master Agreement between Alta and WattStock.

First, GE cannot invoke any limitations under the Master Agreement. As discussed above, GE is not a signatory, and GE cannot show it was ever an intended third-party beneficiary. This alone forecloses its attempt to rely on Section 9.1(A)'s liability cap. That provision expressly applies *only* to "Parties"—exclusively defined to mean Alta and WattStock. GE's lack of privity with the contract, and its inability to meet Texas's strict standard for third-party beneficiary status, is fatal.

Second, GE's fallback argument—that a party cannot recover more under a vicarious liability theory than it could against the principal—rests on a misreading of *Harris v. Houston Methodist Hosp.*, No. 01-17-00544-CV, 2018 WL 3233329, at *5 (Tex. App.—Houston [1st Dist.] July 3, 2018, pet. denied). That case merely reiterates a basic premise of vicarious liability: if a jury finds that an agent committed no tort, the principal cannot be liable for it. But what GE ignores is that GE's vicarious liability does *not* arise merely from WattStock's actions in isolation—Alta's claims are predicated on GE's *own* misconduct. Alta has alleged that GE affirmatively caused Alta to rely on WattStock by holding WattStock out as its exclusive partner and joint participant in the TRUEPackage program. That conduct—GE's representations, omissions, and control over the joint enterprise—gives rise to agency by estoppel and joint enterprise liability. *See Engle v.*

---

[13] ECF 116 at 20.

8

*Dinehart*, 213 F.3d 639 (5th Cir. 2000) (holding that a party's own conduct may equitably estop it from denying an agency relationship).

Accordingly, GE's liability is not limited to what Alta might have recovered from WattStock standing alone. GE is jointly and severally liable for the full extent of the damages proximately caused by its own conduct as well as WattStock's tortious conduct—which was undertaken within the scope of their joint enterprise that GE helped create and control, and because GE's own actions led Alta to reasonably rely on the GE-WattStock relationship.

GE's request for declaratory relief cannot obscure these basic facts. The Master Agreement does not shield GE. Texas law does not support GE. And GE's own conduct renders it liable for the consequences of the fraudulent scheme it helped orchestrate.

### C. GE's Counterclaims for declaratory relief should also be dismissed because they are merely duplicative of GE's Affirmative Defenses.

In its Motion, Alta argues that GE's requests for declaratory relief should be dismissed because they are duplicative of GE's longstanding affirmative defenses. This reality is evident on the face of GE's claims and defenses:

| Requests for Declaratory Relief | Affirmative Defenses |
|---|---|
| (1) "GE requests a declaration that, under Article 9.1(B) of the Master Agreement, Alta is barred from making any claim other than those for which a valid and express exception exists for incidental, indirect, or consequential damages that arise out of or is connected to the Master Agreement, and GE therefore cannot be liable for any such claims. | (1) "Alta's claims for damages for incidental, indirect, or consequential losses for punitive or exemplary damages are barred by the limitations of liability contained within the contract documents relating to the transactions and occurrences described in the First Amended Complaint, including but not limited to Article 9 of the Master Agreement. |
| (2) "GE requests a declaration that, under Article 9.1(B) of the Master Agreement, Alta cannot recover more than $100,000 from GE for any and all claims for which GE, if at all, is vicariously liable for | (2) "Alta's claims for damages in excess of $100,000 are barred by Article 9 of the Master Agreement." |

| | |
|---|---|
| WattStock's alleged contract breaches or tortious conduct.<br><br>Alternatively, GE requests a declaration that, under 9.1(A) of the Master Agreement, if the Court finds that GE is a 'Party' to the Master Agreement, GE's liability for any and all claims, losses, costs, damages including attorneys' fees and costs, arising under the Master Agreement, is capped at $100,000. | |

GE does not even attempt to dispute Alta's observation that Count II of its counterclaims is duplicative of its second affirmative defense.[14] As for Count I, GE's only response is that its first affirmative defense is "broader" because it purports to apply to "all contract documents" and seeks to bar not just incidental, indirect, and consequential damages, but also punitive and exemplary damages.[15] But that argument merely underscores Alta's point: GE concedes that Count I does not seek declaratory relief beyond what GE is already pursuing through its first affirmative defense.

That is textbook redundancy. GE's declaratory claims do not seek any distinct form of relief, nor do they involve any legal or factual issues that will not already be resolved in adjudicating its defenses. Courts routinely dismiss such counterclaims. *See, e.g., Nextera Energy Mktg. LLC v. Shell Energy N. Am. (US) LP*, No. 4:21-CV-02280, 2023 WL 2541964, at *3 (S.D. Tex. Mar. 16, 2023) (dismissing a counterclaim that was "simply a mirror image" of the party's affirmative defense); *Sanijet Corp. v. Lexor Int'l, Inc.*, No. 3:06-CV-1258-B, 2008 WL 2201451, at *3 (N.D. Tex. May 15, 2008) (denying leave to add a declaratory counterclaim that was "duplicative of the issues that will necessarily be resolved" by the party's affirmative claims and defenses); *Meridian Sec. Ins. v. Morris*, No. 5:22-CV-151-RWS-JBB, 2023 WL 5313905, at *3 (E.D. Tex. Aug. 1, 2023) (collecting cases

---

[14] ECF 116 at 17.
[15] *Id.*

dismissing declaratory counterclaims as redundant when they would be "resolved in the course of adjudicating the affirmative claims").

GE's counterclaims add nothing to the litigation that will not already be addressed by resolving the parties' core claims and defenses. That is precisely the sort of redundancy that Rule 12 was designed to eliminate. Both Counts I and II should be dismissed.

**D. Alta breached no contract, and GE lacks standing to bring such a claim.**

In its third counterclaim, GE seeks to recover damages from Alta for an alleged breach of a contract GE neither signed nor is mentioned in. That claim fails as a matter of law for multiple, independent reasons.

First, GE does not point to any authorities establishing that a viable claim for breach may arise from a party's decision to file a lawsuit alleging fraudulent inducement, particularly where— as here—the contract contains no disclaimer of reliance. The right to seek redress for fraud is fundamental, and GE fails to prove that an entity that is not even a party to the contract at issue may enforce such a waiver.

Second, GE lacks standing to enforce the Master Agreement. It is not a party, and it cannot meet Texas's exacting standard for third-party beneficiary status. That alone bars its claim.

Third, nothing in the Master Agreement's text suggests that either Alta or WattStock intended waive their rights to sue non-parties in the future. Courts do not imply such rights absent clear contractual language, and GE identifies none.

For all these reasons, GE's third counterclaim should be dismissed in full.

11

## II. Summary Judgment Is Also Warranted On GE's Affirmative Defense Nos. 1, 2, 12, 13, 15, And 16.

GE attempts to preserve several affirmative defenses, but none withstand scrutiny.

### A. Affirmative Defense Nos. 1, 2, and 16: GE's contractual defenses fail.

GE contends that summary judgment on Affirmative Defense Nos. 1, 2, and 16 should be denied for three reasons: (1) an NDA between Alta and "GE Packaged Power LP" allegedly bars Alta's lost profits claims; (2) Section 9.1(B) of the Master Agreement purportedly bars the same; and (3) the LNTPs between Alta and WattStock allegedly preclude recovery.

#### i. The Alta/GE Packaged Power LP confidentiality agreement.

GE's reliance on an NDA executed by "GE Packaged Power LP" is misplaced for two independent reasons.

First, the GE was *not* a party to that NDA and is not referenced in it.[16] The agreement was executed solely between Alta and "GE Packaged Power LP."[17] Under well-established Texas law, "[a] corporate parent is not a third-party beneficiary of its subsidiary's contract merely by virtue of their relationship." *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011). GE cannot enforce a contract it did not sign. GE does not even acknowledge that the NDA was signed by a different GE entity, much less explain the corporate relationship between "GE Packaged Power LP" and "GE Vernova International LLC." There is no telling how many different GE entities may exist, and how many contracts those entities have signed—which is precisely why GE cannot invoke the benefits of other contracts to which it is not a party.

Second, the NDA does not apply to this dispute. The NDA's stated purpose was limited to exploring the "design, development, sale, and purchase of GE CF6-80C2

---

[16] *See* ECF 80 (GE identifying itself as "General Electric International Inc., n/k/a GE Vernova International LLC d/b/a GE Power Services").
[17] *Id.*

12

engines."[18] Alta's claims concern a wholly different product—GE TRUEPackage™ LM6000 PC Spring GTGs.[19] Even GE admits that "a GE CF6-80C2 is not an LM6000."[20]

In short, GE's reliance on that NDA is no more than a distraction that is irrelevant to the issues before this Court.

### ii. The LNTPs do not bar Alta's claims against GE.

GE also invokes two LNTPs between Alta and WattStock, pointing to language purportedly disclaiming consequential damages.[21] But GE is not a party to either LNTP and is not granted third-party beneficiary status under either document.

The May LNTP states only that "neither Party is liable for any incidental or consequential damages."[22] GE is not one of those "Parties."[23]

The December LNTP similarly limits damages recoverable from "Seller," defined as WattStock.[24] Neither GE nor any other third party is mentioned or granted protection under that provision.[25] Courts do not imply third-party rights absent express language, and these agreements contain none.

### B. Affirmative Defense No. 12: The Economic Loss Rule does not apply.

GE's twelfth affirmative defense seeks to invoke the economic loss rule, arguing that Alta's tort claims are supposedly barred because they are actually based in contract rather than fraud. But GE does not contest that the economic loss rule cannot bar intentional torts such as fraud, fraudulent inducement, tortious interference, civil conspiracy, or vicarious liability. Its argument instead focuses on Alta's negligent misrepresentation claim.

---

[18] ECF 97 at App. 413.
[19] *Id.*
[20] ECF 121 at Alta App. 1270.
[21] ECF 116 at 12.
[22] ECF 97 at GE App. 459.
[23] *Id.*
[24] *Id.* at 449.
[25] *Id.*

13

That argument fails. Alta's negligent misrepresentation claim—like all of Alta's claims—is based on pre-contract misrepresentations that induced Alta to enter into agreements with WattStock rather than GE's competitor, ProEnergy. Alta alleges that GE:

> GE fraudulently/negligently induced Alta Power into executing the Master Agreement and LNTP by making numerous material misrepresentations to Alta Power. GE (1) misrepresented the nature of its relationship with WattStock; (2) falsely represented that it could and/or would make up to nine GE TRUEPackages™ available for Alta Power to buy for at or below $10 million per GE TRUEPackage™; (3) misrepresented the pricing and availability of units; (4) falsely held itself out as the lowest cost, most financeable solution in the marketplace; and (5) falsely represented that GE would "stand behind" and/or "fully wrap" WattStock's work related to the delivery of the GE TRUEPackages™.[26]

These allegations do not "sound in contract"—they sound in tort. Alta specifically pleads that it would not have entered into *any agreement* with WattStock but for GE's various false representations. Moreover, the misrepresentations occurred before any contract was executed. As a result, the economic loss rule does not apply.

### C. Affirmative Defense 13: The WattStock settlement is irrelevant.

GE's thirteenth affirmative defense asserts that Alta's claims are barred by its settlement with WattStock. GE invokes *Miller v. Target Corp.*, 854 F. App'x 567 (5th Cir. 2021), but the comparison does not hold.

In *Miller*, the plaintiff failed to establish liability against a Target employee, so the employer could not be held vicariously liable. *Id.* at 570. That is not the situation here. There has been no adjudication that WattStock is not liable for the tortious conduct underlying Alta's claims. The Bankruptcy Court dismissed Alta's claims against WattStock following a settlement—not a merits determination.

As the Fifth Circuit has made clear, "[a] settlement in general does not prevent submitting to the jury questions about that party's conduct, only pursuing an actual judgment against the settling party." *United Biologics, L.L.C. v. Allergy & Asthma*

---

[26] ECF 54 at ¶¶ 90, 97, 104, 109, 117.

14

*Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 209 (5th Cir. 2020). GE remains potentially liable for WattStock's conduct under joint enterprise and agency principles, as well as its own misconduct. The settlement changes none of that.

### D. Affirmative Defense 15: The statute of frauds does not apply to any of Alta's intentional tort claims against GE.

Finally, GE doubles down on its assertion that Alta's claims are barred by the Statute of Frauds because, according to GE, "Alta's case turns on two alleged promises that it concedes were never reduced to writing: (1) that WattStock (and GE) 'would supply up to nine units for no more than $10 million per turbine'; and (2) that GE 'would stand behind' and 'fully wrap' WattStock's performance—'effectively guaranteeing it'."[27] GE's argument fails on both the law and the facts.

First, GE ignores the many misrepresentations that have nothing to do with price or guarantees, including GE's misstatements about its relationship with WattStock, the bankability of TRUEPackage, and the availability of units.[28] GE's statute of frauds defense does not apply to these allegations.

Second, GE misreads *Sonnichsen*. In that case, the plaintiff's fraud claim was predicated on the same oral promise as its barred breach of contract claim. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 634 (Tex. 2007). Alta has no breach of contract claim and is not seeking to enforce any oral promise. Alta alleges GE made misrepresentations it knew were false—statements about unit availability, pricing, and GE's role in the TRUEPackage warranty—solely to induce Alta's reliance and cause Alta to enter into a contract with WattStock.[29]

As the Texas Supreme Court has repeatedly made clear, such claims are actionable regardless of the statute of frauds. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) ("a promise to do an act in the future is

---

[27] ECF 97 at 18.
[28] ECF 54 at ¶¶ 90, 97, 104, 109, 117.
[29] *Id.*

actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act."). The statute of frauds is no bar to liability here.

## CONCLUSION

GE's counterclaims and affirmative defenses attempt to reframe this dispute around contracts that GE never signed and, in fact, disclaimed any responsibility for performing. This case is not about enforcing a contract—it is about GE's tortious conduct. The Court should dismiss GE's counterclaims and grant summary judgment on Affirmative Defense Nos. 1, 2, 12, 13, 15, and 16.

Respectfully submitted,

By: *Jeb Golinkin*

**JORDAN, LYNCH & CANCIENNE PLLC**
Michael Cancienne
State Bar No. 24055256
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087606
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056
Telephone: 713.955.4025
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com

**BAKER BOTTS L.L.P.**
John Lawrence
State Bar No. 24055825
Ariel House
Texas Bar No. 24122827
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
Telephone: 214.953.6500
john.lawrence@bakerbotts.com
ariel.house@bakerbotts.com

**ATTORNEYS FOR ALTA POWER LLC**

16