UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALTA POWER, LLC, | § | |
| | § | |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | Civil Action No.  3:23-CV-0270-X |
| GENERAL ELECTRIC INTERNATIONAL INC., d/b/a GE POWER SERVICES, | § | |
| | § | |
| | § | |
| | § | |
| *Defendant/Counter-Plaintiff.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are General Electric International's (GE) motion for summary judgment (Doc. 95) and Alta Power, LLC's (Alta) motion for partial summary judgment (Doc. 110).  After reviewing the briefing and relevant caselaw, the Court **GRANTS IN PART AND DENIES IN PART** GE's motion for summary judgment (Doc. 95) and **DENIES** Alta's motion for partial summary judgment (Doc. 110).  As a result, the Court additionally **FINDS AS MOOT** other related motions (Docs. 103, 108).  The Court also **DENIES** Alta's motion to strike.  (Doc. 135).  And finally, the Court **GRANTS** GE's motion to withdraw its motion to seal (Doc. 134) and **INSTRUCTS** the Clerk to unseal Doc. 128-1 and to resolve the motion event on ECF for Doc. 128.  In summary neither side recovers from the other.  Therefore, the Court **DISMISSES WITH PREJUDICE** all claims.

1

# I. Factual Background

This intensely complex case, complete with allegations of fraud, intricate power plant equipment, and even a winter storm, has an exceedingly straightforward answer. Alta and another company, called WattStock, LLC (WattStock), contracted for WattStock to provide power plant equipment to Alta. WattStock worked with GE to provide the equipment. According to Alta, GE and WattStock represented that they could and would provide gas turbines if Alta chose the GE/WattStock offering over another company's offer. Alta reports it went with GE and WattStock because GE represented it would "supply up to nine units for no more than $10 million per turbine" and that GE "would stand behind and 'fully wrap' WattStock's work on the [turbines], effectively guaranteeing their quality and performance."[1] This business relationship blossomed into contractual agreements, only one of which is immediately relevant to this lawsuit. It is the ominous-sounding Master Agreement that, among other provisions, provides that neither Alta nor WattStock nor any of their subcontractors shall be liable to the other for any claim of consequential damages.

While the underlying facts about how Alta came about and ultimately failed to get off the ground are interesting, those facts bear little relation to the Court's resolution of this dispute. All one needs to know is that there is a contract that limits the parties' liability and the Court's job here is to determine whether that contractual provision applies in this case.

---

[1] Doc. 111 at 4–5.

## II.  Legal Standard

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3]  Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[4]

## III.  Analysis

Alta brings seven claims against GE: (1) vicarious liability, (2) unjust enrichment, (3) fraud, (4) fraudulent inducement, (5) negligent misrepresentation, (6) civil conspiracy, and (7) tortious interference with prospective business relations.

However, GE takes a different tack than attacking each individual claim.  GE mainly attacks damages, asserting that in no event can Alta recover for its purported losses.  The Court will address the matter in this fashion, as it is most efficient.  But first, the Court must address Alta's motion to strike GE's reply appendices or to file sur-replies.

---

[2] Fed. R. Civ. P. 56(a).

[3] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (cleaned up).

### A. Motion to Strike

The Court **DENIES** the motion to strike.  The motion to strike is largely moot because the Court only references GE's reply insofar as it discusses *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings LLC*[5] from the Texas Supreme Court, which is a direct response[6] to Alta's argument[7] regarding the same case.  Because GE's *Bombardier* argument is a direct response to Alta's response to GE's motion for summary judgment, the Court **DENIES** the motion.

### B. Lost Profits and Consequential Damages

Alta and WattStock signed a Master Agreement that includes a waiver of liability section.  The language is sweeping:

> Notwithstanding any other provision of this agreement, and to the fullest extent permitted by law, neither party, their respective officers, directors, partners, employees, representatives, contractors or subcontractors shall be liable to the other or shall make any claim for any incidental, indirect or consequential damages arising out of or connected in any way to this agreement.  This mutual waiver of consequential damages shall include, but is not limited to, loss of use, loss of profit, loss of business, loss of income, loss of reputation or any other consequential damages that either party may have incurred from any cause of action including negligence, strict liability, breach of contract and breach of strict or implied warrantee.[8]

Because you skimmed that giant block of text, here are the highlights: the parties to the agreement agreed to not make any claim for any consequential damages "arising

---

[5] 572 S.W.3d 213 (Tex. 2019).

[6] Doc. 129 at 6.

[7] Doc. 119 at 16.

[8] Doc. 97 at App. 432 (all-caps removed from this and subsequent quotations).

4

out of or connected in any way to [the] agreement."[9]  The parties to that contract also defined consequential damages, in part, as loss of profits.

But that is not the whole story—otherwise this case may not have reached the summary judgment stage.  Alta argues that Alta and WattStock were party to the agreement, but GE was not.  Alta claims GE needs to show that it is an intended third-party beneficiary before the contract will cover it.  GE has done so.

The parties dispute whether GE had to have been a subcontractor at the time the contract was signed to claim the protections of the Master Agreement.  Alta argues that because GE was not a subcontractor at the time of signing, it cannot later claim protection under the contract.  Alta is mistaken.

"[A] third-party must make a clear showing that the parties to the contract intended" to benefit the third party[10] by showing "(1) the parties to the contract intended to secure a benefit to it and (2) entered into the contract directly for its benefit."[11]

As to the first point, "[a] third-party beneficiary may be identified in the agreement by class or category of persons, all of whom may not be known to the contracting parties at the time of execution."[12]  The Master Agreement sets out the following categories of persons covered by the agreement: "neither party, their

---

[9] Doc. 97 at App. 432.

[10] *ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *6 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.) (mem. op) (citing *City of Houston v. Williams*, 353 S.W.3d 128, 146 (Tex. 2011)).

[11] *Id.* (citing *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006)).

[12] *ConocoPhillips Co. v. Graham*, 2012 WL 1059084, at *6 (citing *In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 267 (Tex. 2008)).

respective officers, directors, partners, employees, representatives, contractors or subcontractors."[13]  The Master Agreement's use of the term "subcontractors" refers to a category of persons, but the specific persons within that category need not be known at the time of the contract's execution.[14]

This reading makes both intuitive and legal sense.  Intuitively, it would be strange for the contract to cover only those employees employed by a party at the time of the contract, as opposed to covering those employed during the performance of the contract.  After all, everyone understands that employees come and go, so giving the categories a narrow, time-bound reading does not comport with reason.  Legally, as mentioned above, Texas law allows contracts to identify third-party beneficiaries in a categorical way.[15]

As to the second point, Alta argues that it and WattStock did not enter the agreement directly for GE's benefit.  Again, Alta focuses its argument on whether Wattstock and Alta thought of GE at the time they signed the Master Agreement.  But that's not the point.  The directness requirement is not about how specifically the category is defined, it's about whether the benefit conferred is a direct one or an incidental one.[16]  Here, the plain language of the contract directly benefits subcontractors by shielding them from liability.  Therefore, because GE was a

---

[13] Doc. 97 at App. 432.

[14] *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 757 (Tex. App.—Fort Worth 2012, pet. denied) ("The third-party beneficiary need not be specifically named in the contract but must be otherwise sufficiently described or designated.").

[15] *ConocoPhillips Co.*, 2012 WL 1059084, at *6 (citing *In re NEXT Fin. Grp., Inc.*, 271 S.W.3d at 267).

[16] *Maddox*, 361 S.W.3d at 757.

subcontractor of WattStock, it may claim protection under the agreement. Alta's additional arguments to the contrary, as discussed further below, are unavailing.

To begin, Alta overreads the caselaw it marshals. For instance, one of its key cases here is *Resolution Trust Corporation v. Kemp*,[17] which says "Texas law requires that a party claiming third-party beneficiary status must prove *from the terms of the contracts* that the contracting parties *made* the contracts for the benefit of the third party and *intended* to benefit the third party at the time the parties entered into the contracts."[18] Reading this language to require the contract to specifically identify the third-party beneficiary, as Alta does, is a reach. The relevant question is less about how specifically the party itself is identified and more about whether the language reveals an intent to benefit some third party. Here, the Master Agreement reveals such intent by its use of the term "subcontractors."

Alta's argument that it is suing GE for intentional torts allegedly committed prior to the consummation of the Master Agreement also falls flat. The Master Agreement waives "any incidental, indirect or consequential damages arising out of or connected in any way to this agreement."[19] Because GE's purported conduct in the lead up to the signing of the contract ultimately led to the signing of the Master Agreement, it is connected in some way to it. As a result, liability cannot attach to GE.

---

[17] 951 F.2d 657 (5th Cir. 1992).

[18] *Id.* at 662.

[19] Doc. 97 at App. 432.

Next, Alta argues that the term "subcontractors" is "too broad to define a specific, discrete, and limited group."[20]  Alta's argument does not make much sense.  Basically, it argues that since WattStock's list of contractors and subcontractors changed over time, that the group is "undefined and fluctuating."[21]  But that's just not how human beings communicate when speaking categorically.  One can understand when another says: "I want the Texas Longhorns to win a National Championship."  The fact that the Longhorns pick up a player in the transfer portal doesn't change the category such that one can no longer understand what "Texas Longhorns" refers to.  Moreover, the term "subcontractor" is a readily ascertainable and fairly common word.  While Alta complains that the contract does not define the term, its meaning is still readily understood.

Alta also argues that even if the agreement protects GE from liability generally, it does not cover intentional torts.  That's wrong too.  The reason is simple: the text of the agreement.  Alta argues that another liability provision in the Master Agreement makes clear that the above-quoted section does not cover intentional torts.  Section 9.1(A) provides:

> To the maximum extent permitted by law, each party agrees to limit the other party's liability for any and all claims, losses, costs, damages, of any nature whatsoever or claims expenses from any cause or causes, including attorneys' fees and costs and expert-witness fees and costs, so that the total aggregate liability of a party to the other shall not exceed the amount of USD $100,000.  It is intended that this limitation shall apply to any and all liability or cause of action arising under this

---

[20] Doc. 111 at 15.

[21] Doc. 111 at 16.

agreement however alleged or arising, unless otherwise prohibited by law.[22]

Sorry again for the giant block of text. Alta essentially argues that because the above section includes "however alleged or arising," the parties knew how to draft a waiver of all causes of action, but did not do so for Section 9.1(B). Additionally, an important piece of Alta's argument is that all contractual provisions should be read so as to give effect to each term. But Alta's argument falls under its own weight—it cannot be squared with itself.

If the Court adopted Alta's reading, the Court would add text to the contract that simply isn't there. Alta essentially wants the Court to read Section 9.1(B) to say "only including" instead of just "including." It is not the Court's role to rewrite contracts and the Court will not do so here. Moreover, Section 9.1(A) has independent meaning from Section 9.1(B). Alta admits that Section 9.1(A) applies to only WattStock and Alta—not GE. What it does is limit *any* form of damages or attorneys' fees between WattStock and Alta to $100,000, while Section 9.1(B) zeroes incidental, indirect, or consequential damages for, among others, WattStock's subcontractors and WattStock itself. In short, the contract means what it says and says what it means. Therefore, by the express terms of the Master Agreement, GE is not liable for any consequential damages arising from any cause of action—whether it be breach of contract, fraud, negligence, or otherwise.

---

[22] Doc. 97 at App. 432.

Alta makes one other argument relating to the text of the contract: that Section 9.1(B)'s use of "including" and "shall include but is not limited to" somehow implies that "including" means "only including." But this slight distinction in phrasing between Sections 9.1(A) and 9.1(B) does not give rise to a difference that bears legal effect.[23]

Lastly, Alta argues that because GE fraudulently induced Alta to agree to the Master Agreement, the Court cannot now enforce the agreement. But claiming fraud isn't enough to get through the waiver. In fact, the Supreme Court of Texas has "never held . . . that fraud vitiates a limitation-of-liability clause."[24] It has acknowledged that it "must respect and enforce terms of a contract that parties have freely and voluntarily entered."[25] Nevertheless, Alta tries to distinguish its case on the basis that the waiver here limits actual damages and the waiver in *Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC* only limited punitive damages. As GE notes, this contravenes *Bombardier* itself—where the waiver expressly limited consequential damages, just like the one here.

Alta is left with only court of appeals reasoning, which the Texas Supreme Court rejected in *Bombardier*: that if there is fraud, there is no valid liability waiver.[26] Indeed, post-*Bombardier*, the Court of Appeals in Dallas has observed that "[a]bsent

---

[23] *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 132–33 (2012) (noting such phrasing is merely a "belt[]-and-suspenders" way of saying "including").

[24] *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 232 (Tex. 2019).

[25] *Id.*

[26] *See id.* (discussing the court of appeals's decision).

a compelling reason, courts must respect and enforce the terms of a contract that the parties have freely and voluntarily made."[27]  The Texas Supreme Court has made clear that waving the fraud flag does not constitute a compelling reason.  Because that's all Alta does, the limitation of liability is enforceable.  For the reasons stated herein, the Court **GRANTS** GE's motion as to this matter.

### C.  Punitive Damages

The only other measure of damages Alta discusses is punitive damages.  Under Texas law, to recover punitive damages, the party must first recover their actual damages.[28]  Here, because Alta cannot recover its actual damages, it cannot recover punitive or exemplary damages.  Thus, the Court **GRANTS** GE's motion as to this point.

### D.  GE's Contractual Counterclaim

The Master Agreement includes a provision that prohibits either party or its subcontractors from making any claim for consequential damages arising out of the Master Agreement.[29]  GE argues Alta breached that agreement when it initiated this lawsuit.  GE therefore argues that the only issue remaining for trial is the amount of damages here from Alta's breach.

---

[27] *Great Hans, LLC v. Liberty Bankers Life Ins. Co.*, No. 05-17-01144-CV, 2019 WL 1219110, at *9 (Tex. App.—Dallas Mar. 15, 2019, no pet.) (mem. op.).

[28] *See Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex. 1985) ("There is another, and more basic, rule that requires actual damages to be found prior to an award of punitive damages."); *see also El-Khoury v. Kheir*, 241 S.W.3d 82, 89 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Well-settled law holds that a party may not recover punitive, or exemplary, damages unless the party recovers actual damages.").

[29] Doc. 97 at App. 432.

GE cannot recover on a breach of contract because there is no breach under Texas law.  The Texas Supreme Court analyzed a very similar contractual provision in *James Construction Group, LLC v. Westlake Chemical Corporation*.[30]  There, the Texas Supreme Court determined whether a nearly identical provision to the one at issue here either (1) created a covenant not to sue or (2) functions only as a waiver of consequential damages.[31]  The court held that it functioned only as a waiver of consequential damages[32] and the Court sees no reason to depart from the Texas Supreme Court's reasoning on that issue.  Therefore, the Master Agreement does not contain a covenant not to sue for certain damages—only a waiver of those damages.  As a result, GE fails on its contractual counterclaim and GE may not recover attorneys' fees under Texas Civil Practice and Remedies Code section 38.001(8).

\*      \*      \*

Finally, because the Court resolves the entire case on GE's motion for summary judgment, the Court **DENIES** Alta's motion for partial summary judgment.

### E.  Motion to Seal

GE moved to withdraw its motion to seal the exhibit to its reply in support of its motion to exclude.  Alta does not oppose the motion to withdraw.  Accordingly, the Court **GRANTS** the motion to withdraw and **INSTRUCTS** the Clerk to unseal the appendix at Doc. 128-1.  Additionally, because the motion at Doc. 128 is withdrawn, the Court **INSTRUCTS** the Clerk to resolve the motion event on ECF for Doc. 128.

---

[30] 650 S.W.3d 392, 416 (Tex. 2022).

[31] *Id.*

[32] *Id.* at 418.

## IV. Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** GE's motion for summary judgment and **DENIES** Alta Power, LLC's motion for partial summary judgment. As a result, the Court additionally **FINDS AS MOOT** other related motions (Docs. 103, 108). The Court also **DENIES** Alta's motion to strike. (Doc. 135). And finally, the Court **GRANTS** GE's motion to withdraw its motion to seal (Doc. 134) and **INSTRUCTS** the Clerk to unseal Doc. 128-1 and to resolve the motion event on ECF for Doc. 128. In summary neither side recovers from the other. Therefore, the Court **DISMISSES WITH PREJUDICE** all claims.

**IT IS SO ORDERED** this 12th day of June, 2025.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE